# UNION METALLIC CARTRIDGE COMPANY *v.* UNITED STATES CARTRIDGE COMPANY.

# UNITED STATES CARTRIDGE COMPANY *v.* UNION METALLIC CARTRIDGE COMPANY.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

Argued December 5, 8, 9, 1884.—Decided December 22, 1884.

Letters patent No. 27,094 were issued to Ethan Allen, February 14, 1860, for 14 years, for an "improvement in machine for making percussion cartridge cases." The patent was reissued in two divisions, No. 1,948 and No. 1,949, May 9, 1865. No. 1,948 embraced that part of the invention which concerned the mechanism for striking up the hollow rim at one stroke. The original patent and drawings showed such mechanism to be a moving die and a fixed bunter. In No. 1,948, the description was altered so as to state that the bunter might be carried against the die ; and its two claims each contained the words "substantially as described." An extension of No. 1,948 having been applied for, it was opposed, on the ground that such arrangement of a fixed die and a moving bunter was a new invention, interpolated into the reissue. The Commissioner of Patents so held, and required such new matter to be disclaimed, as a condition precedent to the extension. A disclaimer was filed disclaiming the movable bunter as of the invention of Allen. No. 1,948 was then extended by a certificate which stated that a disclaimer had been filed to that part of the invention embraced in such new matter. In a suit in equity afterwards brought on No. 1,948, against machines having a fixed die and a moving bunter, for infringements committed both before and after the extension : *Held*, That the effect of the disclaimer was to exclude those machines from the scope of any claim in No. 1,948, without reference to the question whether they contained mechanical equivalents for the moving die and the fixed bunter.
Allen had not, before the granting of the original patent, made any machine in which the die was fixed and the bunter movable; and it was never lawful to cover, by the claims of a reissue, an improvement made after the granting of the original patent.
Under § 54 of the act of July 8, 1870, ch. 230, 16 Stat. 205, a disclaimer could be made only by a patentee who had claimed more than that of which he was the original or first inventor or discoverer, and he could make a disclaimer only of such parts of the thing patented as he should not choose to claim or hold by virtue of the patent.
In so disclaiming or limiting a claim, descriptive matter on which the disclaimed claim was based might be erased ; but, if there was merely a de-

fective or insufficient description, the only mode of correcting it was by a reissue.

The decision in *Leggett* v. *Avery,* 101 U. S. 256, cited and applied.

An acquiescence and disclaimer, on a decision requiring the disclaimer as a condition precedent to an extension, are as operative to prevent the afterwards insisting on a recovery on the invention disclaimed, as to prevent a subsequent reissue to claim what was so disclaimed.

Letters patent of the United States, No. 27,094, were issued to Ethan Allen, February 14, 1860, for 14 years, for an " improvement in machine for making percussion cartridge cases." A reissue of this patent was granted, in two divisions, No. 1,948 and No. 1,949, May 9, 1865, the application for the reissue having been filed April 7, 1865. The specification of No. 27,094 set forth two improvements: (1) an arrangement or mechanism to trim the open end of the case of the cap-cartridge, to make the articles all alike and true ; (2) striking up or forming the swelled end to form the recess for the priming, as shown at Z, from that of Y, at one stroke, in distinction from spinning them. There were two claims in No. 27,094: (1) the trimming mechanism; (2) striking or forming the hollow rim at one stroke or operation. In reissuing the patent, the trimming mechanism was made the subject of No. 1,949, and the other improvement (the subject-matter of claim 2 of No. 27,094), was made the subject of No. 1,948. This suit was brought for the infringement of No. 1,948 alone. So much of the specification and claims of No. 27,094 as related to the subject of No. 1,948, is copied below on the left hand, and the specification and claims of No. 1,948 are copied below on the right hand, the parts of each not found in the other being in italic :

| *Original. No. 27,094.* | *Re-issue. No. 1,948.* |
|---|---|
| " Be it known that I, Ethan Allen, of the city and county of Worcester, State of Massachusetts, have invented certain new and useful improvements in machinery for making loaded | " Be it known that I, Ethan Allen, of the city and county of Worcester and State of Massachusetts, have invented certain new and useful improvements in machinery for making |

caps or cap-cartridges; and I hereby declare the following to be a full, clear and exact description of the construction and operation of the same, reference being had to the accompanying drawings, in which *Fig.* 1 is a top view or plan, and Fig. 2 a side view; *the same letters indicating the same parts in both.*

My improvements relate to the construction or formation of the case of *the cap* cartridge *in the form shown at Z, or nearly so,* and consist . . . *in striking up or forming* the swelled end to form the recess for the priming, as shown at Z, from that of Y, at one stroke, in distinction from spinning them, as has heretofore been done.

The construction of my improvements, as shown in the drawings, is as follows: J *is* the driving pulley *to receive motion, and its shaft* is provided with *cranks or eccentrics at each end,* to which the *rods H and* H' *connect, the shaft turning in suitable bearings in the frame or base K.* . . . F is a slide receiving motion by H' and moving in *the* ways G, G, carrying the mandrel B, which passes

loaded caps or cap-cartridges; and I hereby declare the following to be a full, clear and exact description of the construction and operation of the same, reference being had to the accompanying drawings, in which *Figure* 1 is a top view or plan, and Fig. 2 *is* a side view, *and pertains to a machine which is the subject of another reissue of these letters patent.*

My improvements relate to the construction or formation of the case of *a metallic* cartridge, and consist in *an arrangement of mechanism for forming or striking up* the swelled end to form the recess for the priming, as shown at Z, from that of Y, at one stroke *or operation,* in distinction from spinning them, as has heretofore been done.

The construction of my improvements, as shown in the drawings, is as follows: *K is the base of the machine;* J, the driving pulley, *which* is provided with *a crank or eccentric,* to which the *rod* H' *is connected;* F is a slide receiving motion by H', and moving in ways G, G, carrying the mandrel B, which passes through the die D; *the die D* has a spring to keep or move it back

through the *movable* die D, *which* has a spring to keep or move it back towards F, and *an enlargement* in *its centre*, to facilitate placing the case *A'* to be taken by B. *The end of D next to E has a hole fitting on the outside of the case A'.* E is a die with an *adjusting* screw. *Y is a case as it comes from the press, and Z shows the same after being trimmed and set, or, in other words, gone through the following operation,* to wit: . . .

*It"* (the case or shell) *"is placed in D or A'* to be taken on B and carried *forward* until *its* end projects (sufficiently to form its rim) *out of D*, when F, meeting D, carries it with *A'* in that position up against E, which flattens the end, and forms the hollow rim, as shown in section at Z, Fig. 2; and, the motion of J continuing, the parts all return to their respective places, ready for another, which, during the same time, has been *prepared* as before de-

towards F, and *a hopper-like opening* in *the upper side* to facilitate placing the case *A*, to be taken by B *and carried into the die D. The mandrel B has a shoulder, a sufficient distance from the end to allow it to enter the cartridge shell just the right distance, and leave enough metal to be pulled into the head of the cartridge. The die D is just the right size to be filled by the shell A when pressed into it by the punch or mandrel B.* E is a die with an *adjustable* screw, *and the case may be carried against it to form the head or rim, or that may be carried against the die D by similar mechanism to F and H'; Z is a case or shell after being headed, forming the cavity for the fulminating powder.*

The operation is as follows, viz., motion, being given to pulley J, is communicated through H' to F and B, and the cases or shells are placed in the recess or in an inclined tube, which feeds them to the punch B. The shell is taken on *the punch* B, and carried *through the die* D until *the* end projects sufficiently to form its rim, when F, meeting D, carries it with *A* in that position up against E, which flattens the end, and forms the hollow rim, as shown

scribed; *the finished case dropping* between the dies D and E, *or, if sticking in D, is punched out by the first motion of the next one and falls out of its way.*

*Having thus fully described my invention, what I claim therein as new and desire to secure by letters patent is . . .*

*Second. I claim striking or forming the hollow rim at one stroke or operation, as above set forth and described."*

in section at Z, Fig. 2; and, the motion of J continuing, the parts all return to their respective places, ready for another *shell,* which, during the same time, has been *placed in position* as before described, *and the punch B, taking on another shell, is carried into the die D, and presses out the one before headed, which drops* between the dies D and E, *when the operation is repeated as before.*

*I claim the mandrel which carries the cartridge shell, in combination with the die D, which admits the same, and against which the closed end of the cartridge shell is headed, substantially as described.*

*Second. I claim the die D, constructed and operating for the heading of cartridge shells, substantially as described."*

The following were drawings of the original and of the reissue :

The Allen machine, as organized for heading, and making a flange upon, cartridge shells, consisted, mainly, of a mandrel, a die, and a bunter, which were combined together in order to operate. The mandrel was a rod with a shoulder upon it, the rod beyond the shoulder being of such diameter as to enter the cartridge shell, which was to be headed, with a pretty close fit, and the shoulder being at right angles to the rod, and formed to support the edge of the shell at the open end of the cartridge, during the operation of heading. The die was a block of metal with a hole in it, of just the size of the outside of the shell; and the axes of the die and mandrel were in the same line. The bunter was a piece of metal so located that it was opposite one end of the die. The machine was also provided with a gutter, which was a prolongation of the hole in the die, but open on top, into which shells were to be introduced prior to being acted upon by the machine. When an unheaded shell was placed in this gutter, with the mandrel as far retracted from the die as possible, the mandrel advanced, in-

serted itself into the shell, and shoved the shell into the die with its closed end projecting beyond the die a sufficient distance to afford metal from which the flange might be formed. In this position, the outside of the shell was supported by the die, the inside of the shell by the mandrel, and the edges at the open end of the shell by the shoulder on the mandrel. The die, mandrel, and shell then advanced together, and the closed end of the shell was forced against the bunter, the shell being thus squeezed down so as to form the flange of the cartridge. The mandrel then retreated, and, as it retreated, slipped out of the shell, leaving the headed shell in the die, and, when the mandrel was fully out of the shell, the die was in its old position. The shell could not follow the mandrel, owing to the fact that it was now headed, and that its head was on that side of the die which was farthest from the mandrel. After the mandrel had retreated sufficiently far from that end of the die which was nearest the mandrel, a second unflanged shell might be placed in the gutter. The mandrel then advanced and entered the shell as before, and the advance of this shell on the end of the mandrel drove out the shell which had just been headed and was sticking in the die. After this second shell had been driven far enough into the die, it was headed as the first shell was, and was, in turn, pushed out by a third shell; and so on in succession. In the operation of the machine, the shell was forced into one end of the die and expelled at the other end, so that the shell moved in the same line and in the same direction from the time it was first acted upon by the mandrel until it was completely expelled from the die. The end of the die farthest from the mandrel was the anvil or rest against which the shell was headed, by the conjoint action of the die and the bunter, the flange being formed fully at the time when the die and bunter were as near as possible the one to the other.

The description in the original patent of the mechanism for striking up or forming at one stroke the swelled end to form the recess for the priming, described the die D as movable, and as being carried with the case or shell, and the mandrel B, in it, against the stationary die E. This is the description to

which the second claim of the original patent referred when it claimed "striking or forming the hollow rim at one stroke or operation, as above set forth and described." The drawings represented that arrangement and no other.

In the reissue, it was stated that the case or shell might be carried against the die E to form the rim; or the die E might be carried against the die D by similar mechanism to the slide F and the rod H'. It was also stated that the cases or shells were placed in the recess or gutter, or in an inclined tube, which fed them to the punch or mandrel B. Nothing was said in the specification of the original patent about carrying the die E against the die D, or about feeding the cases or shells by an inclined tube.

Allen having died, Sarah E. Allen was duly appointed his executrix, in February, 1871. In November, 1873, she applied to the Commissioner of Patents for an extension of No. 1,948 and of No. 1,949. The application was opposed by E. Remington & Sons. Much testimony was taken on both sides. The day of hearing was February 4, 1874. The Commissioner of Patents decided to grant the extension, and rendered the following decision, 5 Off. Gaz. 147: ·

"This is an application by the executrix of the estate of Ethan Allen, for the extension of reissued patents Nos. 1,948 and 1,949, granted May 9, 1865. The original patent was granted to Ethan Allen, February 14, 1860, and comprehended a combined apparatus for trimming the open ends, and then heading the closed ends, of blanks for forming metallic cartridge shells. These operations are each performed automatically, but independently, by different portions of the machinery. Reissue No. 1,948 comprehends the mechanism for heading the shell, and No. 1,949 that for trimming it. No testimony is presented relating to the latter, and it may be dismissed from consideration. Some interpolations of new matter appear in the former, but they have been disclaimed, rendering the scope of the patent unequivocally that of the invention originally described and illustrated in drawing and model. The device in question consists of a hollow recessed sliding die, a reciprocating mandrel, having a shoulder permitting it to enter a shell

the proper distance for heading, and a stationary bunter, organized into a machine which operates as follows: The mandrel being withdrawn into the back portion of the die, which serves merely as a guide for it, a shell with its open end to the rear is placed in the recess of the die, in the path of the mandrel. As the mandrel advances, it enters the shell, and carries it into the die until its closed end projects a little in front for heading. At this point the stock of the mandrel strikes the rear of the die and carries it forward until the projecting end of the shell strikes a fixed anvil and is headed. The mandrel and die then retreat, carrying the headed shell, the die being forced back by a spring to its original position, and the mandrel continuing until it has withdrawn from the shell and passed the feeding recess. The headed shell remains in the die until it is forced out by the advance of the next shell. This is the machine patented, and the claims of the patent are as follows: '1. The mandrel which carries the cartridge shell, in combination with the die D, which admits the same, and against which the closed end of the cartridge shell is headed, substantially as described. 2. The die D, constructed and operating for the heading of cartridge shells, substantially as described.' This was the first successful organized automatic machine for heading cartridge shells. It has undergone various improvements, however, and, as built, and (according to the testimony of the witness Cook) used by the inventor, it is not now in use. It, however, furnished the essential principle of construction which has been maintained in all succeeding heading machines of its class. The hollow die and reciprocating mandrel to receive and carry forward the shell to be headed, and at the same time force out the preceding headed shell, are the chief elements of the machines which have produced the vast quantity of shells that have come into the market since the date of this invention. The rear or guide portion of the die is omitted in the present machines; and, instead of a recess in the die, a special feeding device is employed; also, instead of advancing the die against the anvil, it is now made stationary and the anvil is advanced, the die spring being transferred to it. Whether this latter modification, which is the

principal one, and is admitted to effect materially superior results in heading the larger sizes of shells, is in legal contemplation an equivalent construction mechanically improved, or a substantive invention, has been the subject of much contention in this application. I am, however, so entirely convinced that the matter introduced into the reissue, describing the holding die as stationary, and the bunter as movable, was new matter describing a substantially different invention from the original, possessing different functions, that I have required, as a condition precedent to extension, that this new matter, together with that of the inclined tube for feeding, should be absolutely disclaimed. With such disclaimer, the patent is extended."

With a view to the extension, the following disclaimer was filed on the 4th of February, 1874:

" *To the Commissioner of Patents :*

Whereas reissued letters patent of the United States were, on the ninth day of May, A.D. 1865, granted to Ethan Allen, of Worcester, in the county of Worcester, State of Massachusetts, numbered 1,948; and whereas the Union Metallic Cartridge Company are now the sole owners of said reissued letters patent; and whereas Sarah E. Allen, of said Worcester, as the executrix of the goods and estate of said Ethan Allen, is the sole owner of any extended term of said letters patent which may hereafter be granted; and whereas the Union Metallic Cartridge Company aforesaid have an equitable interest in the extended term of said letters patent: Now, therefore, the said Union Metallic Cartridge Company and the said Sarah E. Allen, executrix, as aforesaid, respectfully show to the Honorable Commissioner of Patents, that, through inadvertence, accident, or mistake, the words ' or that may be carried against the die D by similar mechanism to F and H' " were inserted in the descriptive part of said reissued letters patent No. 1,948, which words were not in the descriptive part of the original letters patent of said Ethan Allen; and thereupon your petitioners disclaim the said movable die E as being of the invention of said Ethan Allen, except in so far as the same,

by fair construction, may be deemed the mechanical equivalent of the die E described and shown in said original letters patent and the drawing thereof: And whereas the said reissued letters patent No. 1,948, in the descriptive part thereof, contain the words 'or in an inclined tube,' which words are not found in the descriptive part of the original letters patent of said Ethan Allen, but said words were introduced into the specification of said reissued letters patent by inadvertence, accident, or mistake, your petitioners disclaim such inclined tube as being of the invention of the said Allen.

> SARAH E. ALLEN, *Executrix.*
> UNION METALLIC CARTRIDGE CO.,
> M. HARTLEY, *President.*"

The following additional disclaimer was filed on the 13th of February, 1874:

" *To the Honorable the Commissioner of Patents:*
Whereas reissued letters patent of the United States were, on the ninth day of May, A.D. 1865, granted to Ethan Allen, of Worcester, in the county of Worcester, and State of Massachusetts, numbered 1,948; and whereas the Union Metallic Cartridge Company, of Bridgeport, State of Connecticut, are now the sole owners of said reissued letters patent; and whereas Sarah E. Allen, of said Worcester, as the executrix of the goods and estate of said Ethan Allen, is the sole owner of any extended term of said letters patent which may be granted: Now, therefore, the Union Metallic Cartridge Company and Sarah E. Allen, executrix, as aforesaid, respectfully show to the Honorable Commissioner of Patents, that, through inadvertence, accident, or mistake, the words 'or that may be carried against the die D by similar mechanism to F and H''' were inserted in the descriptive part of said reissued letters patent No. 1,948, which words were not in the descriptive part of the original letters patent of said Ethan Allen; and thereupon your petitioners disclaim the said movable die E (called a bunter) as being of the invention of said Ethan Allen, thus leaving the description of said die E the same as shown in the

original letters patent and the drawings thereof: And whereas the said reissued letters patent numbered 1,948, in the descriptive part thereof, contain the words ' or in an inclined tube,' which words are not found in the descriptive part of the original letters patent of said Ethan Allen, but said words were introduced into the specification of said reissued letters patent by inadvertence, accident, or mistake, your petitioners disclaim said inclined tube as being of the invention of said Ethan Allen. This disclaimer is absolute, and is filed as an additional disclaimer to that filed February 4, A.D. 1874, in which certain reservations were made.

UNION METALLIC CARTRIDGE CO.,

M. HARTLEY, *President.*

SARAH E. ALLEN, *Executrix.*

New York, February 9, 1874."

The certificate of extension of No. 1,948 was as follows:

" Whereas, upon the petition of Sarah E. Allen, of Worcester, Massachusetts, executrix of the estate of Ethan Allen, deceased, for the extension of the patent granted to said Ethan Allen February 14, 1860, and reissued May 9, 1865, numbered 1,948, for ' machine for making cartridge cases,' the undersigned, in accordance with the act of Congress approved the 8th day of July, 1870, entitled ' An Act to revise, consolidate, and amend the statutes relating to patents and copyrights,' (the said Sarah E. Allen, executrix, having filed a ' disclaimer' to that part of the invention embraced in the following words: ' or that may be carried against the die D by similar mechanism to F and H';' also the words ' or in an inclined tube,') did, on this thirteenth day of February, 1874, decide that said patent ought to be extended: Now, therefore, I, Mortimer D. Leggett, Commissioner of Patents, by virtue of the power vested in me by said act of Congress, do renew and extend the said patent, and certify that the same is hereby extended for the term of seven years from and after the expiration of the first term, viz., from the fourteenth day of February, 1874; which certificate being duly entered of record

in the Patent Office, the said patent has now the same effect in law as though the same had been originally granted for the term of twenty-one years.

In testimony whereof, I have caused the seal of the Patent Office to be hereunto affixed this thirteenth day of February, 1874, and of the Independence of the United States the ninety-eighth.

[SEAL.] M. D. LEGGETT, *Commissioner.*"

Sarah E. Allen, executrix, having, on the 21st of February, 1874, assigned her title to the extended term of No. 1,948, to the Union Metallic Cartridge Company, it brought this suit in equity against the United States Cartridge Company, on the 18th of March, 1874, for the infringement of No. 1,948. The bill alleged an assignment by the executrix to the plaintiff, of her title to No. 1,948, on the 10th of February, 1871; an assignment by the plaintiff to her, on the 7th of February, 1874, of all of its title to No. 1,948; the extension; and the assignment of the extended term. The assignments above mentioned were duly proved. The bill made no reference to any disclaimer.

The machine of the defendant had the die D stationary and the die E, or bunter, movable, and it had an inclined tube for feeding. The die D, the mandrel B, and the bunter E were, as tools, the same as those in the plaintiff's machine. The mandrel entered the shell, pushed it into the die D, supported it on the inside while it was being headed, and the unheaded shell expelled the headed shell from the die D, as in the plaintiff's machine. The die D supported the outside of the shell while it was being headed, and the end of that die acted as an anvil against which the flange was formed by the joint operation of such anvil and the bunter, as in the plaintiff's machine. The flange was fully formed at the time when the end of the die D and the bunter were as close together as the operation of the machine would permit them to be, which was true, also, of the plaintiff's machine. In the defendant's machine, as in the plaintiff's, the unheaded shell entered at one end of the die D, and was expelled from the other end, and moved always in

the same direction with relation to the die D, from the time that the mandrel first took charge of it, until, after being headed, it was expelled from the die. But, in the defendant's machine the die D stood still and the bunter moved towards it to head the shell, while the drawings of No. 27,094 and of No. 1,948 showed a stationary bunter, and the die D moving towards it, to head the shell.

The answer denied that the reissue was lawful, and averred that the original patent was surrendered to claim inventions not made by Allen ; that the reissue No. 1,948 was not for the same invention as was the original patent ; that, as the reissue was void, the extension, also, was void ; that the commissioner granted the extension only on the express condition precedent, that certain new matter unlawfully introduced into the reissue (as decided by him), should be absolutely disclaimed, and that only upon such disclaimer should the patent be extended ; and that said condition had not been complied with. It denied infringement.

Proofs having been taken, the case was heard before Judge Shepley, and he decided it in favor of the plaintiff, on the 13th of April, 1877, and entered a decree holding No. 1,948 to be valid, and to have been infringed, and awarded an account of profits and damages, before a master, from February 10, 1871, except as to the period from February 7, 1874, to February 21, 1874, and a perpetual injunction restraining the defendant from making, using or vending "machines for heading cartridge shells, having a die, mandrel and bunter," excepting five machines specially named, the question as to the use of which was reserved till the master should make his report. The decision of Judge Shepley, 2 Bann. & A., 593, and 11 Off. Gaz. 1118, said : "In the machine admitted to be used by the defendant are found substantially the same die, mandrel and bunter, operating in the same manner to form the flanged head of the cartridge and to expel the shell after being headed, except that in defendant's machine the bunter moves toward the die to head the shell, while in the Allen machine the die moves toward the bunter to head the shell. The fact, as proved, that, especially in the case of cartridges of larger sizes, there

is an advantage in having the die stationary, while the bunter moves toward it, is not sufficient alone to show that this latter form of the machine is not an equivalent of the other, all the elements of the combination existing alike in both, and acting alike in combination. It is contended on the part of the defendant, that the action of the Commissioner of Patents, in requiring a disclaimer of so much of the reissued patent as claimed in specific terms the use of the movable bunter and the stationary die, as an equivalent for the movable die and the fixed bunter, before granting an extension, is conclusive upon the complainant, but we do not so regard it. The patentee, without describing equivalents, is entitled to use equivalents, and to treat the use of equivalents by others as an infringement, and this, upon the evidence in the record, appears to be a clear case of such a use."

The master made a report as to profits, to which exceptions were filed by both parties. On the hearing of the exceptions the case was reheard before Judge Lowell on the question as to whether the original decree should be reversed. He rendered a decision, 7 Fed. Rep. 344, in which he said: "Allen's original patent described a machine organized to move a 'die' against a 'bunter,' and, by their contact, to form a flange or head upon the metallic cartridge, which was carried by the die. The defendant's machine brought a movable bunter against a fixed die. This was an improved form of the machine, and was, perhaps, a patentable improvement; but it was the same machine, and was an undoubted infringement. This improvement was invented by Allen himself, but, after he had obtained his patent, and when he asked for a reissue, he inserted in his description of the mechanism this modified and improved form. The Commissioner required him to disclaim this part of his description, as a condition precedent to granting the reissue. Judge Shepley held that the disclaimer did not prevent the patentee from enjoining the use of machines having this improvement. It is now argued, and, certainly, with much force, that *Leggett* v. *Avery*, 101 U. S. 256, holds the patentee to this disclaimer, as an estoppel. I appreciate the argument, but do not consider myself bound to reverse

Judge Shepley's decision, which I should not feel at liberty to do unless my mind were entirely satisfied that he was wrong. No one can doubt that, if a patentee obtains a patent upon his solemn admission of certain facts, he shall never thereafter be permitted to controvert them. This is *Leggett* v. *Avery.* Judge Shepley, though giving his opinion before that case was decided, could not have overlooked this point. I understand him to decide, that the admission in this case was not of a fact of invention, but of the propriety of inserting a certain clause in the descriptive part of the specification, and, if this were not so, still, if the patentee's invention and his patent rightly included this form, as an equivalent, it was a mere nullity, like an admission of law, to confess that it did not include it. This is the idea shortly expressed by Judge Shepley; and I do not see any necessary conflict between it and the decision of the Supreme Court."

The exceptions of both parties were overruled, and a decree was entered for the plaintiff for $40,367.26, profits to April 23, 1877, without damages. From this decree both parties appealed to this court, but the plaintiff waived its appeal, at the bar.

*Mr. F. P. Fish* and *Mr. B. F. Butler* for appellants.

*Mr. Edmund Wetmore* and *Mr. Causten Browne* for appellees.

MR. JUSTICE BLATCHFORD delivered the opinion of the court. He recited the facts as above stated, and continued:

Many questions were discussed at the hearing which we deem it unnecessary to consider, because we are of opinion that the disclaimer made has the effect to so limit the construction of the claims of the reissue that the defendant's machine cannot be held to infringe those claims. The opposition to the extension proceeded, among other things, on the ground that reissue No. 1,948 was so worded as to cover a machine having a stationary die and a movable bunter—one not within the language or the scope of the original patent, not indicated

therein as the invention of Allen, and not described, and a substantially new and different invention. That the Commissioner intended that the extension should not be granted unless there should be a disclaimer of all claim to have No. 1,948 cover a machine with a stationary die and a movable bunter, and that the second disclaimer filed was such a disclaimer, and that the patent extended cannot be held to be one which covers, by any claim, the defendant's machine, is, we think, entirely clear.

The Commissioner, in his decision, says, that the "interpolations of new matter" in No. 1,948 "have been disclaimed," and that such disclaimer renders "the scope of the patent unequivocally that of the invention originally described and illustrated in drawing and model." The disclaimer is referred to as limiting the scope of the patent, that is, the extent of its claims, and as reducing such scope and extent to what the drawings and model illustrated, namely, a movable die and a stationary bunter, to the exclusion of a stationary die and a movable bunter. The Commissioner adds, that it had been the subject of much contention, in the application for the extension, whether the modification, of having a stationary die and a movable anvil, which, he says, it was admitted, effected materially superior results in heading the larger sizes of shells, was, in legal contemplation, an equivalent construction mechanically improved, or a substantive invention; and that he is so entirely convinced that the matter introduced into the reissue, describing the holding die as stationary, and the bunter as movable, was new matter describing a substantially different invention from the original, possessing different functions, that he had required, as a condition precedent to extension, that this new matter should be absolutely disclaimed. The new matter introduced into the reissue in respect to the moving of the bunter or die E, was introduced into the descriptive part, by inserting the words, "or that" (the die E) "may be carried against the die D by similar mechanism to F and H'," but it was also introduced into the two claims, by the use of the words "substantially as described," in those claims.

This reissue took place under § 13 of the act of July 4,

1836, ch. 357, 5 Stat. 122, which provided for a surrender and the issuing of a new patent "for the same invention," "in accordance with the patentee's corrected description and specification." This provision was repeated in § 53 of the act of July 8, 1870, ch. 230, 16 Stat. 205, now § 4916 of the Revised Statutes, with the additional enactment that "no new matter shall be introduced into the specification." But where new matter was, even before the act of 1870, introduced into the description, and in such manner as to enlarge the claim, and cause the patent to be not "for the same invention," the reissue was invalid to the extent that it was not for the same invention.

It is quite clear that Allen had not, before the granting of the original patent, made any machine in which the die D was stationary and the bunter movable. If that arrangement was a "new improvement of the original invention," and was invented by Allen, and after the date of the original patent, he could, under § 13 of the act of 1836, have had a "description and specification" of it "annexed to the original description and specification," on like proceedings as in the case of an original application, and it would have had "the same effect, in law," from "the time of its being annexed and recorded," "as though it had been embraced in the original description and specification;" or he could have applied for a new patent for the improvement. Such last named provision of § 13 of the act of 1836 was repealed by the act of 1870, and was not reenacted therein, nor is it found in the Revised Statutes. But it was never lawful to cover, by the claims of a reissue, an improvement made after the granting of the original patent.

The statute in force in regard to disclaimers, when the disclaimers were filed in this case, was § 54 of the act of 1870, which provided, "that whenever, through inadvertence, accident or mistake, and without any fradulent or deceptive intention, a patentee has claimed more than that of which he was the original or first inventor or discoverer, his patent shall be valid for all that part which is truly and justly his own, provided the same is a material or substantial part of the thing patented; and any such patentee, his heirs or assigns, whether

of the whole or any sectional interest therein, may, on payment of the duty required by law, make disclaimer of such parts of the thing patented as he shall not choose to claim or hold by virtue of the patent or assignment, stating therein the extent of his interest in such patent; said disclaimer shall be in writing, attested by one or more witnesses, and recorded in the Patent Office, and it shall thereafter be considered as part of the original specification, to the extent of the interest possessed by the claimant and by those claiming under him after the record thereof." This word "claimant" is an evident error, for "disclaimant," as "disclaimant" is the word used in § 7 of the act of March 3, 1837, ch. 45, 5 Stat. 193, which was the first statute providing for a disclaimer. This error is perpetuated in § 4917 of the Revised Statutes.

It is a patentee who "has claimed more than that of which he was the original or first inventor or discoverer," and only "such patentee," or his assigns, who can make a disclaimer; and the disclaimer can be a disclaimer only "of such parts of the thing patented as he shall not choose to claim or hold by virtue of the patent or assignment." A disclaimer can be made only when something has been claimed of which the patentee was not the original or first inventor, and when it is intended to limit a claim in respect to the thing so not originally or first invented. It is true, that, in so disclaiming or limiting a claim, descriptive matter on which the disclaimed claim is based, may, as incidental, be erased, in aid of, or as ancillary to, the disclaimer. But the statute expressly limits a disclaimer to a rejection of something before claimed as new or as invented, when it was not new or invented, and which the patentee or his assignee no longer chooses to claim or hold. It is true, that this same end may be reached by a reissue, when the patentee has claimed as his own invention more than he had a right to claim as new, but, if a claim is not to be rejected or limited, but there is merely "a defective or insufficient specification," that is, description, as distinguished from a claim, the only mode of correcting it was and is by a reissue.

It is apparent that the Commissioner, when he said that the disclaimer affected "the scope of the patent," and that the

matter introduced into the reissue was "new matter, describing a substantially different invention from the original, possessing different functions," and that he had required it to be absolutely disclaimed, "as a condition precedent to extension," meant that he had required such new matter, that is, the arrangement of a stationary die and a movable bunter, to be disclaimed, as an invention of Allen, covered by the reissue.

What was done was in accordance with this view. In the first disclaimer, that of February 4th, 1874, it is said, that by inadvertence, accident, or mistake, the words " or that may be carried against the die D by similar mechanism to F and H'." were inserted in the descriptive part of No. 1,948, and were not in the descriptive part of the original patent. Thereupon, the petitioners disclaim, not such descriptive words, as a description merely, but they disclaim "the movable die E as being of the invention of " Allen, but with this limitation or reservation, " except in so far as the same, by fair construction, may be deemed the mechanical equivalent of the die E described and shown" in the original patent and its drawings. It was sought to reserve the question of the mechanical equivalency of the stationary die and movable bunter with the movable die and stationary bunter, and not have the disclaimer absolutely reach and cover the former, but still leave the claims to cover it. But this was evidently not satisfactory to the Commissioner, and he required a further disclaimer. So, the one of February 13, 1874, was filed, which states, on its face, that it " is absolute, and is filed as an additional disclaimer" to the first one, " in which certain reservations were made." In this second disclaimer, the language as to the inserted words is the same as in the first, and the statement of disclaimer is, that the "petitioners disclaim the said movable die E (called a bunter) as being of the invention " of Allen, "thus leaving the description of said die E the same as shown in the " original patent and drawings. The reservation was expunged. The effect of the disclaimer was to limit the claims of the reissue to a machine with the stationary die E, shown in the original patent and drawings, and to prevent their any longer covering, even if they had before covered, a movable die E, or bunter.

Such was the effect of the disclaimer on the reissue, without reference to the extension. But, the certificate of extension itself states, that the executrix had "filed a disclaimer to that part of the invention embraced in the following words : 'or that may be carried against the die D by similar mechanism to F and H',' " and what is extended is No. 1,948, with such disclaimer. After an extension has been obtained on the condition precedent of making such disclaimer, the disclaimer cannot be held inoperative as respects the extended term.

We regard this case as falling within the principles laid down in *Leggett* v. *Avery*, 101 U. S. 256. There the original patent was issued in October, 1860. It was surrendered and reissued in June, 1869, and extended in October, 1874. As a condition of obtaining the extension, the patentee disclaimed the specific claims which the defendants in the suit were charged with infringing, the extension having been opposed, and the Commissioner having refused to grant it unless the patentee would abandon all but one of the six claims of the reissue, there having been but one claim in the original patent. This was done, and the extension was granted for only one of the six claims, which one the defendants had not infringed. Three days after the extension was granted a reissue was applied for, including substantially the claims which had been thus disclaimed. The reissue was granted, two of the claims in it being for substantially the same inventions which had been so disclaimed before the extension, and for different inventions from the invention secured by the patent as extended. A reference to the record of the case in this court shows, that the Commissioner decided that the extension would be granted provided the disclaimer should be filed, and that the disclaimer concluded with the words "reserving right to reissue in proper form." This court held, that the Commissioner erred in allowing, in the second reissue, claims which had been expressly disclaimed, because the validity of such claims had been considered and decided with the acquiescence and express disclaimer of the patentee ; and that this was a fatal objection to the validity of the second reissue.

The acquiescence and disclaimer must be regarded as equally

operative to prevent those who hold the reissue in suit, whether in respect to the time before or after the extension, from being heard to allege that persons who use machines with a stationary die D and a movable bunter E infringe the claims of the reissue. The disclaimer was one of the fact of invention. It could not lawfully be anything but a disclaimer of the fact, either of original invention, or of first invention. It was not merely the expunging of a descriptive part of the specification, involving only the propriety of inserting such descriptive part in the specification, but it was a disclaimer of all claim based on such descriptive part, because the claims were made to cover such descriptive part, by the words "substantially as described," in the two claims. The question of fact is not open now as to whether Allen invented at any time the stationary die D and movable bunter E, or as to whether it was, or is, or could be, a mechanical equivalent for the movable die D and stationary bunter E, because those questions are concluded by the disclaimer.

It is conceded by the plaintiff, that, if by the operation of the disclaimer, it is estopped to say that a stationary die D and a movable bunter E are the equivalent of the movable die D and the stationary bunter E, the defendant does not infringe.

*The decree of the Circuit Court is reversed, with costs to the United States Cartridge Company, on both appeals, and the case is remanded to that court, with direction to dismiss the bill, with costs.*