REECE BUTTONHOLE MACH. CO. v. GLOBE BUTTONHOLE MACH. CO. et al.

(Circuit Court, D. Massachusetts. March 29, 1893.)

No. 2,938.

1. PATENTS FOR INVENTIONS—BUTTONHOLE MACHINE.

Letters patent 240,546, granted April 26, 1881, to John Reece, for a buttonhole sewing machine, are not infringed as to claims 5, 11, 12, 13, and 18 by the machine made under letters patent 450,844 and 450,950, issued April 21, 1891, to James H. Reed and Charles A. Dahl, for a buttonhole stitching and barring machine; for the Reece patent, by its specifications and claims, is a machine moving the cutter and stitcher to and over the cloth clamp and cloth, while the Reed and Dahl machine moves the cloth clamp and cloth to and under the cutter and stitcher.

2. SAME—EXTENT OF CLAIM—LIMITATION.

Reece's eleventh claim was in part for a device "to change the positions of the frame and bedplate longitudinally." This was objected to on the ground that no means were shown for moving the bedplate relatively to the framework, as the claim would seem to imply. The claim was modified so as to read, "move said framework longitudinally upon said bedplate." Held, that the patentee was limited to a machine wherein the frame moved and the bedplate was stationary, although a machine built substantially according to the description of the patent could be made to operate by fixing the frame and moving the bedplate.

In Equity. Bill by the Reece Buttonhole Machine Company against the Globe Buttonhole Machine Company and others for infringement of letters patent. Bill dismissed.

James H. Lange, F. P. Fish, and J. J. Storrow, for complainant.

Charles E. Mitchell, Clarke & Raymond, and Frederic H. Betts, for defendants.

CARPENTER, District Judge. This is a bill to enjoin an alleged infringement of claims 5, 11, 12, 13, and 18 of letters patent No. 240,546, granted April 26, 1881, to John Reece, for a buttonhole sewing machine. The machine made by the respondents is described in general and essential features in the specifications and drawings of letters patent Nos. 450,844 and 450,950, both issued April 21, 1891, to James H. Reed and Charles A. Dahl, for a buttonhole stitching and barring machine. The only issue here is whether the respondents have infringed.

In constructing a machine to make buttonholes there are two classes of elements to be taken into account: First, the cloth or leather in which the buttonhole is to be made; and, secondly, the various devices (1) to support and clamp the work; (2) to cut the buttonhole; and (3) to stitch the buttonhole. At the time the Reece invention was made, the known machines for this purpose, none of which were entirely automatic, were divided broadly into two classes. In one class, the cloth being supported on the cloth plate and there clamped, the cloth plate remained at rest, and the cutting and stitching mechanisms were moved with relation thereto; in the second class, the cloth being in like manner supported, the cloth plate moved so as to present the work in the proper

relation to the operating mechanism for cutting and stitching. The machine shown in the patent to J. A. and H. A. House, No. 39,442, dated August 4, 1863, is an example of the first class; while the machine known as the "Humphrey" or "Union" machine, first patented to Daniel W. G. Humphrey, October 7, 1862, and the machine shown in the patent to J. A. and H. A. House, No. 36,932, dated November 11, 1862, are examples of the second class. The Humphrey machine required the work to be turned half way around at each buttonhole, while the House machine moved the work forward to the extent of the length of the buttonhole, and laterally to the extent of the width of the eye of the buttonhole. The Humphrey machine may be said to turn the work, and the House machine to move the work.

I come, then, to consider what construction shall be given to the Reece patent. or, in other words, what is the extent of the Reece invention? This, I take it, is to be determined by ascertaining what is the new function conceived by Reece as embodied in his machine. For the purpose of this case the question may be solved, in one view, by ascertaining whether the new function of the Reese machine was conceived by him as applying to both the general methods of operation above described, or whether it was confined to one. alone. This question appears to be significant when attention is turned to the machine of the patent and to the alleged infringing machine. They differ in nearly every detail of construction, and nearly every operation is performed by different devices. For the purpose of the present discussion, however, these different devices may be assumed to be equivalents for each other. But there is a broad distinction between the patented machine, as literally described in the patent and as actually built by the complainant, on the one hand, and the machine of the respondents on the other. The first machine moves the cutter and the stitcher to and over the cloth clamp and the cloth, while the second machine moves the cloth clamp and the cloth to and under the cutter and the stitcher. This broad difference not only characterizes the machines, as wholes, but also evidently determines many of the differences in detail between the two, in respect to which differences in detail the Dahl machine, being the junior machine, may be said to vary by the substitution of what may be assumed, as before said, to be equivalents. The question, then, recurs whether the fixed cloth plate type of machine described in the patent is intended by the Reece patent to be the best machine in which his invention may be embodied, or whether it is intended to limit the field of his invention to machines of that type. I confess that the preamble of this specification, although not, of course, conclusive, seems to me very persuasive on the question as to what was the real invention. He says:

"This invention relates to sewing machines for stitching buttonholes, and is an improvement upon that class of the said machines wherein the stitching mechanism is made to travel first along one side of the buttonhole slit, then about the eye, and along the other side of the slit."

It might be said that this language imports that the machine is one which shall cause the presentation of the needle to the cloth

in a certain way, without reference to whether this be effected by the motion of the needle or by the motion of the cloth. But this suggestion is met by the consideration that there were previous machines in which the needle—in an imperfect way, indeed—traveled, but still traveled in this same path, as appears by reference to the machines to which I have already referred. The statement seems to me strongly to suggest that the machine as conceived by the inventor was not a machine in which, for example, the needle at successive points of time was to be found at successive points of space over the surface of the cloth, but rather a machine in which the needle reached those points successively by its own motion as distinguished from the motion of the cloth. If this be so, of course the statement qualifies and is to be read into each claim, and limits them all, so as to exclude all machines constructed like those built by Dahl.

I think the reading of the claims, taken in connection with their history, strongly confirms this view. In the fifth, eleventh, and thirteenth claims the framework which carries the cutting and stitching mechanism is literally described as "moving." The eleventh claim, as originally drawn, was as follows:

"(11) In a buttonhole sewing machine, a clamp and bed to hold the material, the framework, a, the buttonhole cutting device connected therewith, combined with a cam disk to operate the said buttonhole cutter to cut a slit in the material held by the clamp, and then to [change the relative positions of the frame and bedplate longitudinally,] to remove the blade of the cutter from above the clamp, substantially as described."

The examiner objected as follows:

"In the first claim the inclusion of means for changing 'the relative positions of the bedplate and framework longitudinally' must be objected to, as no means is shown and described for moving the bedplate relatively to the framework, as the claim would seem to imply. The eleventh claim must be objected to for the same reasons as were urged to the first claim, no means being shown for changing the relative position of the bedplate with respect to the frame, as the claim would seem to imply."

The petitioner thereupon amended the eleventh claim by striking out the words above included in brackets, and inserting in their place the words "move said framework longitudinally upon said bedplates." The first claim was amended in similar terms. Words of the same import were inserted in the twelfth and thirteenth claims, in response to objections of the examiner, but under circumstances which make these changes less persuasive than that above quoted.

I now pass to a consideration of the question whether this change operates to limit the scope of the patent to the literal terms of the inserted words, in so far as they differ from the terms of the words for which they were substituted. It is clear that these literal terms, if originally written in the claim, would not limit the invention to a machine having the specific motions indicated by them, if it appeared that the state of the art at the time of the invention would permit a construction so broad as to include other correlative and equivalent motions, whether of the part described as moving or of one or more of the associated parts. On the other hand, it is clear that if the literal terms under discussion were substituted neces-

sarily, and only, for the purpose of limiting the claim to the specific motion finally described, as distinguished from the motion described by the erased words, then they do operate so to limit the claim to that extent. The complainant in this case refers to the fact that nearly all the cases in which specific words have been so construed have been cases in which the prior state of the art would have so limited the invention, even if the specific words had not been used, and he urges that the doctrine should not be extended further. But it seems to me that this argument would make the doctrine of no effect. The inventor may be limited to the only possible invention, and this is to be determined by an examination of the state of the art. He may also be limited by the actual limits of the invention, so far as those limits may be ascertained from his own words; and such a limit I think may be inferred from his intentional substitution of a narrow claim for a broad claim. When he has himself fixed such limits, he cannot afterwards claim a construction which will extend his rights beyond them. He has himself decided in advance whether the invention which he has in fact made be a broad one or not. Union Metallic Cartridge Co. v. United States Cartridge Co., 112 U. S. 624, 5 Sup. Ct. Rep. 475. The complainant contends that the patent itself shows that the invention of Reece was broad enough to cover both the corresponding or reversed motions which appear in these two machines, because the machine literally described in the patent is capable of both motions. It is, indeed, true, as shown by experiment at the hearing, that in a machine built substantially, in the respects here considered, according to the description of the patent, if it be so placed as that the bedplate, rather than the frame, rests on the earth through suitable supports, the operation of making a buttonhole may be carried on by the movement of the bedplate, carrying the cloth clamp and the cloth, while the frame remains at rest. But this was not the apparent intent of the inventor, and the machine as a whole is not, I think, so constructed as to suggest such a use, or to make it desirable or economical. The whole construction of the machine, as distinguished from the underlying principle on which it operates, seems to me to be contrived with great skill to operate only by the movement of the frame, and to be a development of the idea or invention of a machine which should operate only in that way. But laying aside this consideration, which is not conclusive, but only confirmatory, it seems to me most clear that when the complainant suggests that the Reece machine, as described in the patent, is capable, by a change of anchorage of the parts, of the reversed motion, wherein essentially the Dahl machine differs from it, he points out the course which the patentee might have taken had he intended to claim the construction for which the complainant now contends. The officer of the patent office rejected the claim which seemed to imply that the bedplate might be made to move, not because an invention so broad as that was impossible, by reason of the state of the art, which would show that it was not novel, but he rejected it because, by reference to the specifications, it seemed to him that the inventor had not described, and therefore had not in fact made, an invention so broad.

If, in this conclusion, the patent office official was in error, the patentee might have answered the objection in either of two ways: He might have pointed out that the description in the specification implied the reversal of motion, because it was evident from an inspection of the drawing that if the bedplate, rather than the frame, were anchored, the proper motions of the interacting parts would still go on. He would have been plainly right in this assertion. And if the examiner had rejoined that the specification shows no description or reference to an organization whereby the bedplate is anchored, the patentee would have satisfied this objection by so amending the specification as to describe the method by which the alternative motion could be effected. Instead of so doing, he modified the claim so as to bring his invention within the limited field to which the examiner apparently supposed it to be in fact confined.

It has been strongly argued that, when an invention as actually made appears to have a broad scope, the court ought to make every possible intendment in order to give the inventor the full benefit of his invention. The argument is very persuasive. But I think that in this case the inventor has deliberately and unequivocally fixed a limit beyond which, under the present decisions on this point, the court is not at liberty to extend his rights. In reading with great care the testimony of the inventor in this case, and the specifications and claims of the patent, I find myself also more and more led to the conclusion that the patent, as above construed, does in fact cover the actual invention. The inventor, in his testimony, describes very clearly, and still briefly, the whole train of operations by which by the mere tripping of a single lever by the operator (and with the slackening or pulling down of the thread, which is a necessary preliminary to the operation of most, if not all, sewing machines) is performed automatically the whole work of making a buttonhole. But he does not claim as an integral organism the mechanism which performs this work. He claims separately the mechanism which performs each step in this train of operations, but makes no claim which combines any of these separate mechanisms. It is true, indeed, that this may arise from the opinion of the person who drew the papers as to the proper function of the claims, rather than from the opinion of the inventor as to the scope of his invention. But from considerations broader than this, in fact, from the case as a whole, it seems to me that the invention as it lay finally in the mind of the inventor was that of a completely organized automatic machine to make a buttonhole by moving the stitching mechanism, and, further, that the inventors of the Dahl machine have reached the same result by a different road.

The bill must be dismissed, with costs of the respondents.