**HOOKLESS FASTENER CO. v. LION FASTENER, Inc.*** 

**No. 5625.**

**Circuit Court of Appeals, Third Circuit.**

**June 9, 1936.**

*For supplemental opinion on denial of rehearing, see —— F.(2d) ——.

Fish, Richardson & Neave, of New York City, and Brown, Critchlow & Flick, of Pittsburgh, Pa. (Jo. Baily Brown, of Pittsburgh, Pa., Merrell E. Clark, of New York City, Paul N. Critchlow, of Pittsburgh, Pa., and R. S. Kelley, of Meadville, Pa., of counsel), for appellant.

Hugh C. Lord, of Erie, Pa., for appellee.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

This court in the case of Lion Fastener, Inc., v. Hookless Fastener Company, 72 F. (2d) 985, considered the questions of the validity and infringement by the Lion Fastener, Inc., the defendant-appellee here, of certain Sundback product or manufacture patents, owned by the Hookless Fastener Company, the plaintiff-appellant, for fastener stringers or what are commonly called "zipper fasteners."

This case involves the patents for the machines used for making the fastener stringers or zippers.

The plaintiff contends that the defendant's machine infringes its letters patent, Sundback, No. 1,331,884, and Sundback, No. 1,467,015. Claims 1, 20, 33, and 34 of the first patent, and claims 32, 33, 46, 47, and 54 of the second patent, are involved in the suit.

The machines cut, form, and attach to a corded tape, in a continuous and co-operative operation, the metal fastener members, forming the stringers of the zipper fastener.

1. The first patent in suit is Sundback, No. 1,331,884, filed March 16, 1916, patented February 24, 1920.

A continuous roll of beaded-edge tape and metal strip are fed to the machine from opposite sides, meeting each other on the path of the cord, and by the operation of the machine are converted into a continuous stringer which is later cut into proper lengths.

The flat strip of metal is fed step by step across the paths of die tools. The first tool, which has an outline shape of the member, punches from the metal strip a Y-shaped blank. The blank is pushed from the metal strip into a die underneath the metal strip and a spring pressed plunger thrusts the blank back into the opening in the metal strip from which it was punched. The metal strip acts as a holding and transfer device for the blank and the fastener element which is formed from the blank by the operation of the machine. The metal strip, holding the blank, is propelled forward another step to a point where another overhead tool knocks out the scrap metal left between the blank and the point where the next blank is punched.

The metal strip is thus severed into two scrap strips, but the blank is still held in its form and is advanced forwardly to a point where the next punch forms the head of the member from the blank by making a projection and a corresponding depression in the head of the blank. During this operation the blank is held in position by side guides over a co-operating female die. The element is then completed.

The finished member is carried forward in the grasp of the waste strips to the beaded-edge tape, which is brought up from the roll below the machine and edgewise between the strips of scrap metal.

Side punches squeeze the jaws of the member, by acting on the surrounding scrap metal strips, toward each other on the edge of the tape.

The tape and the metal strip are advanced a step after each clamping operation in order to bring the machine into position to carry out its operating function.

2. The second patent in suit is Sundback, No. 1,467,015, filed July 10, 1919; patented September 4, 1923.

This patent describes an improved machine for manufacturing fasteners.

Instead of using a flat strip of metal from which blanks are punched, the machine slices the blanks from a pre-shaped metal stock having the same cross-section as the blanks.

As the metal stock is thrust upwardly, a cutting tool passes over its end, shaving the blank from the stock, and transferring the severed blank to a die mounted in the periphery of a rotary circular dial or table. The blank is held in the die while a punch, co-operating with the die, forms the projection and depression in the head of the member. The dial is rotated a quarter turn to bring another die into position to receive the next blank severed.

Opposite the cutting tool and punch and in the periphery of the dial, the beaded tape is inserted between the jaws of clamping elements. As the dial rotates, it brings with each movement a die with a finished element into position where the extended jaws of the element may be clamped over the head on the tape by the transverse movement of the clamping elements.

Thus, each time the dial is rotated by the movement of a ratchet positioned on the axle of the dial, a blank is inserted in the die and shaped by the punch and a finished member is clamped on the tape. Proper mechanisms intermittently advance the tape upwardly, remove the clamped member from the die, and bring the tape into position between the open jaws of the next formed member to be attached to the tape.

3. The defendant's machine:

The plaintiff contends that the defendant's machine is a combination of the features of the first and second patents in suit. The defendant's machine produces a stringer similar to that of the plaintiff.

A flat metal stock is fed continuously to the defendant's machine. An overhead punch cuts the Y-shaped blanks from the stock as it advances. Simultaneously, the punch transfers the cut-out blank to a die directly beneath it on a dial similar to that of the second patent in suit. The dial is rotated a quarter turn and at that point an overhead punch forms the projection and recess in the head of the blank. The dial is rotated another quarter turn to bring the member opposite the beaded tape which moves upwardly between the extended jaws of the member. The jaws are clamped on the tape by the transverse action of clamping elements located adjacently to the periphery of the dial. The tape is moved slightly outward by the kick of inserts loosening the fasteners in the die and is fed upwardly a step to make way for the next fastener.

The first Sundback patent in suit has been the subject of prior litigation. In the Exchequer Court of Canada, the first patent was held valid and infringed. The Supreme Court of Canada held that the prior art limited the claims to the particular structure described, and when so limited, the patent was not infringed. On an appeal to the Judicial Committee of the Privy Council, the judgment of the Exchequer Court of Canada was restored. Lightning Fastener Co., Ld., v. Colonial Fastener Co., Ld. (1934) 3 Dominion Law Reports, p. 737.

The District Court for the District of Connecticut held the first patent valid and infringed. It limited the claims to an automatic machine for making slide fasteners and held that this was new in the art and that claims 1, 36, 37, 42, and 46 were valid and infringed; while claims 34 and 38 were invalid. The Court of Appeals for the Second Circuit reversed the decree, holding that the claims required a narrow construction, and, so construed, the claims

were valid but not infringed. Hookless Fastener Company v. G. E. Prentice Manufacturing Company, 68 F.(2d) 848, 850.

After that decision, the plaintiff filed disclaimers to both patents. The disclaimers limited the claims of the patents specifically to machines designed to make slide fasteners.

The District Court, in the case before us, after stating that it would follow the decisions of the Circuit Court of Appeals for the Second Circuit and the Supreme Court of Canada, held that the defendant's machine does not infringe the patents in suit as originally drawn and that the disclaimers filed by the plaintiff are not effective to save the broad claims of the patents and, in fact, are not within the disclaimer statute.

So far as the first patent is concerned, we are of the opinion that the learned District Judge correctly held that the defendant's machine does not infringe it. We are content to rely on the reasoning of the Court of Appeals in the Prentice Case, supra, and the language appropriate to this case in the opinion of the Privy Council in Lightning Fastener Company v. Colonial Fastener Company, supra, in disposing of the question of the validity of the first patent. But even if those claims are valid, they must be so limited as to exclude the defendant's machine. The defendant's machine is so similar to the device of the second patent that if that patent and its claims are valid, it is infringed.

The disclaimer to the second Sundback patent is as follows:

The patentee by the assignee " 'Hereby enters this disclaimer to that part of said specification which is in the following words, to wit:

" 'The shape of the member is governed by the cross sectional shape of the metal strip and hence the machine is adapted to make members of different shape and for different purposes than the fasteners herein indicated and I do not desire to be limited in this respect. Certain mechanisms might be omitted, such as the forming punch, in the manufacture of other forms of fasteners or the carrier and feeding device.'

"And your petitioner further disclaims from the scope of each of claims 1 to 33, inclusive, and 41 to 59, inclusive, any combination or any machine, and from the scope of each of claims 34 to 40, inclu-

sive, any method of making, except one for forming and affixing to a tape carrier slide fastener members such as are described in the sentence beginning in line 24, of page 1 of the specification and reading as follows:

" 'The fastener member blanks consist of a body carrying separated jaws, and provided with a recess on one side and a head on the other, these respective recesses and heads being arranged on a pair of tape stringers so as to alternately interlock through a slider mounted on both stringers.' "

The disclaimer was filed March 7, 1934.

The defendant contends that the disclaimer is an attempt to enlarge the patent by adding elements to its claims, and that in consequence the disclaimer is invalid.

But we do not think that the disclaimer adds anything to the patent. It simply wipes out of the specification any general reference to machines other than one for the manufacture of slide fasteners or zippers.

In Altoona Publix Theatres, Inc. v. American Tri-Ergon Corporation, 294 U. S. 477, 490, 55 S.Ct. 455, 460, 79 L.Ed. 1005, the Supreme Court stated: "The use of the disclaimer has been upheld where the elimination from the patent of the matter not relied upon did not operate to enlarge the monopoly of the patent, but narrowed it, as by eliminating in their entirety some of the claims of the patent, Sessions v. Romadka, 145 U.S. 29, 40, 12 S.Ct. 799, 36 L.Ed. 609; see Union Metallic Cartridge Co. v. United States Cartridge Co., 112 U.S. 624, 642, 5 S.Ct. 475, 28 L.Ed. 828, or by striking out an alternative method or device, Dunbar v. Meyers, 94 U.S. 187, 192, 194, 24 L.Ed. 34; Hurlbut v. Schillinger, 130 U.S. 456, 9 S.Ct. 584, 32 L. Ed. 1011; Carson v. American Smelting & Refining Co., 4 F.(2d) 463, 469, 470 (C. C.A.9th), or by limitation of a claim or specification by deletion of unnecessary parts, Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 435, 436, 22 S.Ct. 698, 46 L.Ed. 968; Marconi Wireless Telegraph Co. v. DeForest Radio Telephone & Telegraph Co., 243 F. 560, 565 (C.C.A.2d), or by limiting the claim to a specific type of the general class to which it was applied, Minerals Separation, Ltd. v. Butte & Superior Mining Co., 250 U.S. 336, 354, 39 S. Ct. 496, 63 L.Ed. 1019; United Chromium, Inc. v. International Silver Co., 60 F.(2d)

913, 914 (C.C.A.2d); Seiberling v. John E. Thropp's Sons Co., 284 F. 746, 756, 757 (C. C.A.3d)."

As the court said in the Prentice Case, "inventive ability of no mean order was required to produce it [the machine described in the first patent]." In the second patent, the plaintiff has given a new machine which is greatly improved and is extraordinarily useful. A machine of precision is required to carry out the co-operative movements necessary to furnish a commercially successful slide fastener. The disclaimers were an honest attempt to conform to the opinion of two appellate courts both of which agreed that the first patent was valid when limited to the part of the patent not disclaimed.

The claims in suit must themselves be examined, and in connection with the disclaimer as well, to determine their validity and scope.

Claims 32, 33, 46, 47, and 54 of the second patent are involved, and in reference to those the plaintiff disclaimed "any combination or any machine * * * except one for forming and affixing to a tape carrier slide ·fastener members such as are described in the sentence beginning in line 24, of page 1 of the specification and reading as follows:

"The fastener member blanks consist of a body carrying separated jaws, and provided with a recess on one side and a head on the other, these respective recesses and heads being arranged on a pair of tape stringers so as to alternately interlock through a slider mounted on both stringers."

Claim 32 reads: "A machine for making jaw fastener members comprising in combination a movable die in which said members are adapted to be deformed to provide an interlocking surface, means for intermittently feeding the members to said die, and means for moving said die after the formation of said interlocking surface for affixing the members to a tape."

■ This is a claim for a machine for making jaw fastener members with certain other elements. It provides for means for moving a die after the formation of the fastener members "for affixing the members to a tape." The above-quoted clause is confusing, but we take it that it should be interpreted to call for means for moving the rotable die into position for the affixing of the fastener members to the tape. Read in that manner, the defendant's machine does not infringe claim 32. But what is more important, the claim must fall in face of the disclaimer of any machine "except one for forming and affixing to a tape carrier slide fastener members."

■ Claim 54 is also defective and void. It is too broad in view of the first Sundback patent. But even if it is valid, the defendant's machine cannot be read upon it. The means forming the combination patented are not enumerated, and in the narrow range of equivalents permissible here, the defendant's machine is not an infringement of that claim.

■ Another claim, No. 46, provides: "In a machine for forming blanks, a rotatable column having a plurality of dies, means for feeding the blanks to said dies, means for forming the blanks in the dies, means for attaching the formed blanks to a carrier, and means for rotating the column to bring the blanks into position for so attaching."

This claim is for a machine for forming blanks—a general mechanical idea with other elements added. It must fall in face of the disclaimer. The plaintiff disclaimed from the scope of this claim any machine "except one for forming and affixing to a tape carrier slide fastener members." The language of the claim calls for a machine for forming blanks. It is true that the plaintiff has added integers which, when read with the specification, in effect make the invention claimed a machine for slide fasteners and not a machine for forming blanks. But the plaintiff has expressly disclaimed any machine except one for manufacturing slide fasteners as described in the specification. Thus, claim 46 is void since the language used attempts to appropriate a general mechanical idea other than the one reserved by the disclaimer.

■ Nos. 33 and 47 are combination claims. Claim 33 reads: "33. The combination of a rotatable column having a plurality of dies, means for feeding blanks to the dies, means for forming the blanks in the dies, means for feeding a tape, means for attaching the formed blanks to said tape, means for intermittently rotating the column to bring the formed blanks into position for so attaching, and means for holding the tape away from the column during the rotation of the latter."

This claim for a combination is valid and infringed by the defendant. It defines the invention set out in the patent as limited by the disclaimer.

The other combination claim, No. 47, lacks the two elements of No. 33 providing for "means for feeding a tape" and "means for holding the tape away from the column during the rotation of the latter," and adds a "means for cutting blanks." Even if those differences are not vital, the combination is essentially the same as that claimed in No. 33.

The problem of the prior art has been carefully considered in the litigation concerning the first patent. We refer to barbed-wire machines that sever barbs from pre-fed metal strips and clamp them to wire after forming the barbs (Brainard, No. 292,467; Stover, No. 240,477; Clow, No. 361,928); a machine for making and carding hooks and eyes (Major, No. 525,-914); and Aaronson, No. 107,456, which described a machine to fix pre-formed fastener members of the hook and eye type to stringers. Of course, the first patent is part of the prior art.

The learned District Court said that the sole inventive thought of the second Sundback patent seemed to be the innovation of feeding a pre-shaped wire to the machines from which the blanks are sliced.

But we are of the opinion that the basic thought in the second patent is found in the entirely new combination of elements for making slide fasteners. It was a considerable advance over the combination of the first patent which, we know by reason of prior litigation, involved invention.

It is the combination here that involves invention. A metal wire is fed to the machine; a blank severed from the wire, transferred to a die on an intermittently rotating dial, where it is shaped into a member by coacting tools and clamped on the tape and released from the die. Thus, a stringer is formed by the cooperation of these several elements, some of which are old; some, perhaps, new.

■ The settled rule of the Supreme Court which has been quoted with approval time after time is as follows: "It must be conceded that a new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were well known and in common use before the combination was made. But the results must be a product of the combi-nation, and not a mere aggregate of several results, each the complete product of one of the combined elements. Combined results are not necessarily a novel result, nor are they an old result obtained in a new and improved manner. Merely bringing old devices into juxtaposition, and there allowing each to work out its own effect without the production of something novel, is not invention. No one by bringing together several old devices without producing a new and useful result, the joint product of the elements of the combination and something more than an aggregate of old results, can acquire a right to prevent others from using the same devices, either singly or in other combinations, or, even if a new and useful result is obtained, can prevent others from using some of the devices, omitting others, in combination." Grinnell Washing Machine Co. v. Johnson Co., 247 U.S. 426, 432, 38 S.Ct. 547, 549, 62 L.Ed. 1196; Hailes v. VanWormer, 20 Wall. 353, 368, 22 L.Ed. 241.

The defendant's machine is the mechanical equivalent for practical purposes of the second Sundback machine. Its functions are similar except in details. Blanks are punched out of a flat strip of metal fed horizontally to the machine instead of from a pre-shaped wire; the blank is formed in the second stage of the dial's revolution rather than at the same time the severed blank is transferred to the dial; and the tape travels in and out of the die in which the jaws of the member are clamped to it and then up rather than traveling upwardly continuously when it is released from the dial.

■ Those details are not important enough to deprive the plaintiff of its monopoly. As it was said in one of the other zipper cases, "the fact that their machine is not as efficient * * * will not enable them to escape the charge of infringement."

This point comes directly within the language of the court in National Cash-Register Company v. American Cash-Register Company, 53 F. 367, 373 (C.C.A.3): "Though some of the corresponding parts of the machinery are not the same, and, separately considered, could not be regarded as identical or conflicting, yet, having the same purpose in the combination, and effecting that purpose in substantially the same manner, they are the equivalents of each other in that regard."

The decree of the District Court is affirmed as to the Sundback patent, No. 1,-331,884, and claims 32, 46, 47, and 54 of Sundback, No. 1,467,015, and is reversed as to claims 33 of Sundback, No. 1,467,015.