## LION FASTENER, Inc., v. HOOKLESS FASTENER CO.

## HOOKLESS FASTENER CO. v. LION FASTENER, Inc.

### Nos. 5282, 5304.

Circuit Court of Appeals, Third Circuit.

Sept. 20, 1934.

Hugh C. Lord, of Erie, Pa., for Lion Fastener Co.

Brown, Critchlow & Flick, of Pittsburgh, Pa. (Jo. Baily Brown, of Pittsburgh, Pa., of counsel), for Hookless Fastener Co.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

The several patents in suit relate to fasteners of the separable slide fastener type. As embodied in the plaintiff's commercial product they form an interlocking metallic seam familiar to nearly everyone in his tobacco pouch, brief case, golf bag, sport clothes, and a multitude of articles of personal use. The finished product is called a "zipper," the word doubtless being derived from the sound, or speed, in opening and closing it. Although fasteners of this type are widely known, just how or why the thing works has long been a mystery to the casual observer. However, on looking upon the organization on the underside of a model large enough to reveal the movement of its elements, it is simplicity itself.

The fastener is made of two rows of small, thin, flat, metallic, interlocking members spaced apart in relation to one another. Each row is secured along one edge of a tape; the other edge of each tape is stitched to edges of the object sought to be supplied with a fastener. When so attached, the two rows of metallic members face each other. Each metallic member at its facing end is supplied on its upper side with a projection and on the under side of the projection with a recess just large enough to admit the projection of its fellow in the opposite row, and so on to the end. The problem was to engage securely the projections in the recesses of the myriads of members on the two rows and thus effect a fastening. (Security of engagement against transverse flexing will be discussed later). This was accomplished by separating the members in each row a distance slightly more than their breadth and staggering the members of the two rows so that members in one row should go between members in the other row and place their projections in the corresponding recesses. To bring them into this interlocking position a manually controlled guide block called a "slider" is provided. It has Y-shaped channels consisting of two upper channels or guideways through which the two rows of metallic members are fed when the slider is drawn down in closing position. Then (on the slider continuing its closing movement) the rows of staggered members gradually approach one another and converge into a single guideway lower down—the stem of the Y—where the members are ultimately brought into parallel, overlapping, interleaving relation and the projections on the upper sides of one series of members on one tape fit into corresponding recesses on the under sides of members in the series carried by the other tape, and lock. Thus there is achieved the familiar locked metallic seam, made more complete by "stops" also attached to the tapes which pass into the guideways and arrest the movement of the slider at the end of the seam.

The fastener is unlocked by drawing the slider along the seam in the other direction. This, reversing the operation, draws the rows of members up through the single guideway until they strike a tongue in the crotch of the Y which separates the projections from the recesses of the members. The rows, so separated, then pass up to and out of the first two guideways and the article is unfastened.

We are of opinion that this composite structure involves invention and of a rather high order. In respect to its inventive novel-

ty and utility, the plaintiff says: "The patented fastener was the first operative slide fastener ever manufactured which did not employ hooks and eyes or equivalent elements; it has superseded all others, has had great commercial success, has been manufactured all over the world under Sundback's patents, has been the basis of a small but steadily growing industry."

That may be true, but it should be observed that not all of the elements were contributions or inventions of Sundback. Hence these suits, bringing into issue what inventive contributions, if any, Sundback made to the finished fastener, we have attempted to describe. The learned trial court held all claims of the patents in suit valid and all save one infringed, granting and withholding relief in respect to certain of them. Both parties appealed.

### Defendant's Appeal.

Concurring with the learned trial court, we shall take the Kuhn-Moos British Patent No. 14,358 of 1912 (with a corresponding Swiss patent) as the best example of the art when Sundback entered it. This patent discloses quite clearly that, before Sundback, Katharina Kuhn-Moos had the idea of a hookless fastener composed of dual rows of staggered metallic members so spaced apart that on being drawn through the guideways of a slider and made to converge, the projections of members on one row would fit into recesses of members on the other row, whereby all members would interlock and the metallic seam be formed.

The specific locking means of this invention is a semicircular recess formed in the upper side of each block-shaped member (about as thick as it is wide) and a downwardly projecting rounded pin on its under side. "The arrangement of these pins and recesses is such that the pins of one row enter the recesses formed in the other row on the slider being actuated."

This invention, so far as the record discloses, has never gone into commercial use. Seemingly, it will not work. It tends against safe flexing because, it is urged, the members are too large and the locking means too insecure, with the result that on flexing the seam the pins come out of their recesses and the thing unfastens. This may be questioned. However, it is not disproved; neither is it proved that the invention is capable of practical operation. So far as the record discloses, the Kuhn-Moos patent has stood for more than two decades as a paper patent containing the kernel of an inventive conception not reduced to actual practice.

The substance of the Sundback Patent, No. 1,219,881, issued March 20, 1917, and in this litigation called the first patent, is that, in combination with other elements, it supplies means for making the invention of the Kuhn-Moos patent function. If so, it is invention, with limitations.

All claims of the patent, except claim 5, are in suit. The first three relate to interlocking means of a certain size and shape, the remainder to stopping means. The specification calls for flat or thin interlocking members distinguished from the Kuhn-Moos block-shaped members. Claims 1, 2, and 3 define the shape of the projections and corresponding recesses in different terms, meaning substantially the same thing, as follows: "End surface of the projection of each member meeting in an edge," "a transversely elongated rounded recess on one side and a transversely elongated rounded projection on the opposite side, the recess and the transversely elongated end surface of the projection of each member meeting in an edge," and "projections having inclined ends continuous with the recess side of the member." Put into plain words, this means the projections and recesses are rectangular, transversely rounded, and extend from edge to edge of the interlocking members. The theory of the operation of members of this shape is that when a projection enters a recess it will stay there, that is, on transversely flexing the tape it will hold by a kind of binding action. Anyhow, it works. It is a reduction to actual practice of the Kuhn-Moos conception and to that extent is invention and it is so without any expansion of the claims or change of the invention by the disclaimer. The characteristics which distinguish the first Sundback patent from the Kuhn-Moos patent are the shape of the projections and recesses, the thickness of the members, and the presence of stops in Sundback and their absence in Kuhn-Moos. It is the first two of these characteristics that make the conception of Kuhn-Moos operative; the third improves the operation. Taken together, they are entitled to the credit of bringing the idea into commercial use and establishing the industry, for without them the Kuhn-Moos disclosure would have remained only an interesting idea. We therefore concur with the learned trial judge in holding the claims of the first patent in suit valid so far (and only so far) as they are distinguished from Kuhn-Moos. Weber Electric Company v. E. H. Freeman Electric

Company, 256 U. S. 668, 41 S. Ct. 600, 65 L. Ed. 1162.

On the issue of infringement the defendant's fastener has stops so similar in structure and function to those of the first patent that discussion is not necessary. They infringe. It also has projections and recesses on interlocking members of the prior art, as it has a right to have, except the members are thin instead of thick. Seeking to distinguish its projections and recesses from those of the patent, the defendant made them triangular in shape instead of rectangular with a rounded end as in the patent, extending not to the abrupt edge of the member but to a beveled edge, a newly made edge. They hold or bind and thus securely lock by reason of the sharp characteristics of these elements just as do the members in the first patent in suit, and, similarly, prevent unfastening on being transversely flexed. The fact that the projections and recesses of the defendant's members are narrower than those of the first patent makes no functional difference. Nor does the change in geometrical figures change the function. Each possesses the same elements; each effects locking in the same way and operates on the same principle. The locking members of the defendant's device fall within claims 1, 2, and 3 of the first patent and, accordingly, infringe.

■ Claims 1, 2, 3, 7, and 15 of the Sundback Patent No. 1,243,458, issued October 16, 1917, called the second patent, are in suit. This patent is an outcome of the stormy time the first patent had in the Patent Office. All claims in the application for the first patent were rejected on Kuhn-Moos. After that, many amendments flowed in on a troubled course. There was also launched an application for another patent which eventuated in the second patent in suit. It is (with at least one exception) for the identical inventions disclosed in the application for the first patent. It would not be fatal on an issue of double patenting were the claims of the second patent directed to different parts of the structure of the first patent. It would, however, be fatal unless it plainly appears in the second patent that the inventions covered by its claims are separate inventions distinctly different and independent from those covered by the first patent. There must be something more than a mere distinction in the breadth or scope of the claims of the patent.

■ In this instance the specifications in the two applications (and patents) are in part identical and in the main the same. The inventions are illustrated by identical diagrams.

The claims of the second application (and now of the second patent) are distinguishable from those in the first only by greater particularity and corresponding limitations. The learned trial court found, as does this court, that "the only difference between the two applications is that the second application more specifically states the elements that may distinguish it from the Kuhn-Moos structure. There are no new elements brought into the Sundback structure by the second application." We are constrained to find the inventions of claims 1, 2, 3, and 15 of the second patent are identical with claims of the first patent. Claims 1, 2, 3, and 15 are therefore invalid for double patenting under the law of Miller v. Eagle Mfg. Co., 151 U. S. 186, 198, 14 S. Ct. 310, 38 L. Ed. 121, Thomson-Houston Electric Co. v. Ohio Brass Co. (C. C. A.) 80 F. 712, and Thomson-Houston Electric Co. v. Jeffrey Mfg. Co. (C. C. A.) 101 F. 121.

■ Claim 7 of the second patent, however, rests on a different footing. This claim relates not to the locking feature of the members, but to a "stringer" in a fastener "for carrying connecting members comprising a tape, and cords attached thereto on opposite sides along one edge." This is means for connecting the operative elements of the fastener to a tape and thence to the article which is to be fastened. These tapes are referred to in the first patent as "stringers," elements in combinations essential to the set-up of the fastener but not described in any particular form. Claim 7 of the second patent dealing with stringers and specifying their structure is for a separate invention distinctly different and independent from any covered in the first patent and falls within the law of the authorities just cited saving a claim from double patenting. The claim is valid. Claim 7 also reads directly on the defendant's two-cord stringer in which, concurring with the learned trial court, we find infringement.

■ Of the third patent, which is Patent No. 1,566,996, issued to Sundback on December 22, 1925, claims 6, 12 and 13 are in suit. These claims, in different words are for "a slider comprising wings having inturned edges forming diverging channels, a clamping rivet passing through said wings between the channels, and a pull device pivoted to said rivet."

The Circuit Court of Appeals for the Second Circuit has held claims 6 and 12 of the third patent invalid in view of the Sundback Patent No. 1,306,606 and Aronson Patent No. 1,060,412. Hookless Fastener Co. v. G. E.

Prentice Mfg. Co. (C. C. A.) 68 F.(2d) 940. The same claims in a corresponding Canadian patent were held invalid for want of patentable invention by the Exchequer Court and the Supreme Court of the Dominion in Lightning Fastener Company, Ltd., v. Colonial Fastener Company, Ltd., et al., 1933 Supreme Court Reporter 371. On viewing the inventions of the Aronson patent and the last-cited Sundback patent, we cannot believe that what Sundback did in the third patent, though constituting a slight difference, was an inventive advance over what had gone before. Not every change involves invention. This may be a slight improvement discerned and effected by one familiar with the art. The change is one of structure, not of function. We do not think it amounts even to high skill. It is a mere change, and, but for the fact that the defendant imitated it, we should doubt improvement. We are therefore constrained to hold the three claims of the third patent in suit invalid for want of invention.

### Plaintiff's Appeal.

The plaintiff appealed from a portion of the decree entered by the trial court on Shipman Patent No. 1,734,405, the fourth patent in suit, for a separable fastener which provides an engagement means for securing a slider in a desired position relative to the rows of interlocking members carried by flexible stringers. The court found by its decree that "defendant's regular product does not infringe said patent" (from which the plaintiff has not appealed) and made a statement in its opinion supported by evidence and also in its decree that the defendant admits making a few automatic lock sliders, but denies selling them and states it had ceased to make them before suit was brought. Therefore the court was of opinion that it was unnecessary to pass on validity and infringement of the patent because infringement, if any, was inconsequential and would not support a decree for an injunction. It is from this phase of the decree that the plaintiff has appealed, claiming a right to a judicial determination of the validity of the patent and to an injunction.

After reading the evidence, we find ourselves in full accord with the learned trial court that the defendant's regular product does not infringe and that, though the defendant made a few automatic lock sliders which might infringe, it did not sell them, is not making them now, and is not now threatening to make and sell them. We cannot find in the plaintiff a right to an adjudication of its patent against such a shadowy background, nor do we think it is necessary to the plaintiff's protection of the Shipman patent that an injunction issue restraining the defendant from repeating what it did, if not innocently, certainly quite harmlessly. We recognize the law which tends to the allowance of injunctions for the full protection of patentees against infringement, but, indeed, in a situation as attenuated as this one, we believe that law is inapplicable.

Paragraph 1 of the decree, holding claims 1 to 4 and 6 to 11 of Sundback Patent No. 1,219,881 valid and infringed, is affirmed; paragraph 2, in so far as it holds claims 1, 2, 3, and 15 of Sundback Patent No. 1,243,458 valid and infringed, is reversed, and in so far as it holds claim 7 of the same patent valid and infringed, is affirmed; paragraph 3, holding claims 6, 12, and 13 of Sundback Patent No. 1,566,996 valid and infringed, is reversed; and paragraph 5, refusing an injunction on the Shipman Patent No. 1,734,405, is affirmed.

As neither party appellant has wholly prevailed on its appeal, we direct, after estimating the cost of printing the record in respect to the several patents, that the costs of appeal be divided and be taxed equally between the respective parties.