DONALDSON v. ROKSAMENT STONE CO.

(Circuit Court, E. D. New York. January 21, 1910.)

PATENTS (§ 326*)—SUIT FOR INFRINGEMENT—VIOLATION OF INJUNCTION.

An officer of a corporation enjoined by final decree from infringing a patent, who was personally responsible for its acts and also for those of a new corporation formed thereafter, *held* in contempt for violation of the injunction.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 613–619; Dec. Dig. § 326.*]

In Equity. Suit by John Donaldson against the Roksament Stone Company. On motion to punish John Boswell, an officer of defendant corporation, for contempt for violation of injunction. Motion sustained.

See, also, 170 Fed. 192.

O. Ellery Edwards, Jr., for complainant.

William H. Janes (Clarence Ladd-Davis, of counsel), for respondent Boswell.

CHATFIELD, District Judge. This court decided in the above-entitled action that patent No. 624,563, dated May 9, 1899, to C. W. Stevens, was valid, and on the 18th day of May, 1909, an injunction was issued to the defendant, its officers, trustees, directors, managers, agents, servants, and workmen. Among the parties so served was one John Boswell, the former president of the defendant corporation, which was then in liquidation or insolvency. Subsequently it appeared that the said Boswell, who is within the jurisdiction of this court, was, under the name of "The Marbolith Stone Company," conducting, in the Southern district of New York, the business of making artificial stone, and an application was made to this court to punish him for contempt, upon allegations that the Marbolith Stone Company was but a means adopted by the said Boswell to avoid the effects of the injunction issued against the defendant corporation and its offi-

cers, and also alleging that Boswell, by means of the Marbolith Stone Company, was infringing, and thus was in contempt of the decree and injunction order of this court.

Considerable testimony has been taken on behalf of both the complainant and Boswell, and certain experiments have been performed in the presence of the court. In the meantime, also, an action has been started in the Southern district of New York, by the complainant herein, against the Marbolith Stone Company, in which an application for a preliminary injunction was made. It appears by the record that the question of issuing a preliminary injunction in that action turned upon the use by the Marbolith Stone Company of what is known as the Sellars patent, No. 244,321, dated July 12, 1881, and an order was made in the action in the Southern district of New York restraining the Marbolith Stone Company from making stone by the Stevens process, but expressly providing that no injunction was intended against operations by the defendant in that suit under the Sellars patent above referred to.

Upon the argument of the motion to punish for contempt in this court, the experiments performed by the complainant showed that certain material, admittedly of the same sort or a part of the molding material used by Boswell for the operations of the Marbolith Stone Company, absorbed and drained away water in substantially the same manner as the material used by the complainant under its method of utilizing the Stevens patent; and, while there was some dispute as to the accuracy of tamping the two molds, the general principles involved and the application of the illustration was apparent. At the same time the complainant poured the fluid material out of which stone was to be made into various molds prepared for the purposes of illustration, one of which was made under the specifications of the Sellars patent with paraffine wax, mixed in the proportion of 7 parts of paraffine to 93 parts of sand, and then treated with steam or hot air before pouring in the concrete. In this particular mold, the liquid did not drain or flow away to any appreciable extent, but stood at the surface level for several hours, and the setting of the concrete or fluid material in the mold was accomplished by the chemical hardening and the evaporation of the water from the bare or exposed surface of the casket.

These experiments exactly defined the scope of this court's former decision, and made it apparent that, if the Sellars patent had been misinterpreted by this court, then it probably should have been held as an anticipation of the Stevens patent; whereas, on the other hand, if the Sellars patent was correctly interpreted by this court, the respondent Boswell, in his operations under the name of the Marbolith Stone Company, was certainly infringing the Stevens patent, and not using the Sellars patent in any sense of the term. Because, therefore, the question has arisen in just this way, and because the court's original decision must stand upon the merits if it is to be upheld, it seems proper to decide the motion in the present contempt proceeding, even though it involves a question that may be before the Circuit Court in the neighboring district, upon final hearing of the case against the Marbolith Stone Company.

The language of the Sellars patent is as follows:

"Concrete, artificial stone, cement, and like substances have not hitherto been made available for ornamental purposes generally, or where great diversity of form or shape has been requisite, on account of the difficulty of giving the desired outline to the said concrete, artificial stone, cement, and like substances." (Lines 11–17.)

"The great obstacle to making castings of concrete or artificial stone has been the facility with which such concrete or stone has adhered to the surface of the mold, rendering the removal of the casting from the said mold difficult, and a disfigured and rough article, quite unfit for use from an artistic point of view, has been produced. By my invention perfect concrete or like castings of any form or design obtainable in metal can be easily formed." (Lines 26–37.)

"In carrying my invention into practice, the molds in which the concrete, artificial stone, cement, or like substances are cast are formed or made of the following ingredients combined in the proportions stated: Sand, charcoal, or finely-divided material, 100 parts, by weight; paraffine or similar wax-like substance unacted upon by alkaline matter, from 6 to 11 parts, by weight. Molds made with 93 parts by weight of sand and 7 by weight of paraffine answer well." (Lines 40–51.)

"To insure that the casting shall be smooth and well finished, steam or hot air is passed over the surface of the composition mold before the concrete or the like is poured or filled in." (Lines 55–58.)

"Claim 1. A composition to be used in the formation of molds for shaping concrete and like plastic material, the same consisting of a lubricating binding material which is not affected by alkalies, such as paraffine, and a finely-divided body material, such as sand or charcoal, substantially as and for the purpose specified."

The testimony upon this motion shows that the Marbolith Stone Company, or Mr. Boswell in his work with that company, has been using a mold of some sort of sand, mixed with what his testimony shows is a preparation of paraffine, sold for the purpose of oiling waxed floors, and generally described by the term "floor oil," a substance fluid at ordinary temperatures and solidifying at a point below freezing, or below 32 degrees Fahrenheit. It is apparent that artificial stone could not be cast by the use of water at a temperature below freezing, and nothing is shown which would indicate that Sellars had in mind the use of any such liquid, or that his patent referred to a liquid of any sort. His statement that the paraffine or other wax was to be mixed with sand, in the proportion of certain parts which would seem to be determined by volume rather than weight, and his further direction that the mold is to be smoothed and finished by the use of heat or steam, under which the paraffine wax would melt and cause a surface impervious to water, seemed to this court at the time of its original decision to place the Sellars patent entirely within the realm of a nonabsorbent or substantially water-tight mold, and this would be no anticipation of the Stevens patent.

If this court was wrong in such a conclusion, and if the Sellars patent discovered and taught the use of a mold in which drainage was intended or accomplished by the use of the process, then it would seem that the Sellars patent should have been considered an anticipation of the Stevens patent, and the decree sustaining the validity of the Stevens patent could not have been made. For this reason, no further determination of the issues involved upon the present motion to punish for contempt need be made, and the application holding Mr. Boswell in contempt, because of his use, through the form of the Marbolith

Stone Company, of the ideas secured to the complainant, within a certain territorial district, by the decree in this action, must be granted. Inasmuch, however, as Mr. Boswell's acts have been under an apparently honest assumption that the question of using the Sellars patent was still open to him, and that his use thereof was without knowledge of this court's decision that the Sellars patent was limited to a non-absorbent mold, and inasmuch as Mr. Boswell and the Marbolith Stone Company both agree to refrain from further acts, so long as this court's decree shall remain in force, no award of damages or costs will be made.