## A. S. BOYLE CO. v. SIEGEL HARDWARE & PAINT CO.
### No. 4447.

District Court, D. Massachusetts.
Dec. 15, 1938.

218

Dike, Calver & Gray, George P. Dike, and Cedric W. Porter, all of Boston, Mass., for plaintiff.

Blythe D. Watts, of Cleveland, Ohio, and Nathan Heard and Frederick A. Tennant, both of Boston, Mass., for defendant.

FORD, District Judge.

The instant case is a suit which charges infringement of claims 5, 6, 7, 14, 17, and 18 of a patent issued to one Griffiths No. 1,838,618. The patent was issued December 29, 1931, as the result of an application filed November 17, 1923.

The plaintiff is The A. S. Boyle Company, the present owner of the patent. The defendant named in the suit is the Siegel Hardware and Paint Company (hereinafter referred to as the Siegel Company). It is a Massachusetts corporation located at Boston, and it is charged with infringement of the patent in suit by selling an artificial wood composition known by the trade name of "Wood Fix" and manufactured by The Sheffield Bronze Powder and Stencil Co., Inc. (hereinafter referred to in this opinion as the Sheffield Company of 1934). This latter company is an Ohio corporation located at Cleveland, and it entered a general appearance in this case, becoming a party defendant, and defended the present suit.

Statements of fact and conclusions of law appearing herein are intended to meet the requirements of Rule 52 of the new Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c.

The defenses relied on by the defendants are: (1) Invalidity in view of the prior art; (2) non-infringement; (3) that the claims in suit are broader than those described in the original application; (4) that the specification of the patent is not in full, clear, concise and exact terms; (5) that the patent is invalid for failure to file a seasonable disclaimer; and (6) that the claims of the patent cannot be construed broadly enough to cover a composition of matter not including nitrocellulose, because during the prosecution of the application, the patentee cancelled certain claims in the file wrapper.

The patentee in his application states:

"This invention relates to plastic composition and has for its object to provide a plastic mass which may be used for many purposes, for example, for filling, coating or moulding * * *."

It is described as a doughy, putty-like plastic composition which, when exposed to air, hardens and becomes a wood-like

substance, adheres firmly to any clean, dry foundation, does not blister or powder when exposed to moderate heat, and is not affected by water, gasolene, or other commonly available liquids. It may be used for filleting by pattern makers, and filling screw and nail holes by joiners and cabinet makers and repairing mouldings and carvings, and building up or repairing lasts by shoe makers. The composition is known by the trade name of "Plastic Wood."

Ingredients suggested in the specification are celluloid scrap (nitrocellulose), ester gum, and castor oil, to be dissolved in solvents to which a filler of wood flour is added. There are various formulae in the specification for the combination of these ingredients, and the limits within which the proportions may be used.

It is suggested that in place of celluloid scrap other forms of nitrocellulose may be used, such as celluloid in the form of sheet or the like.

The claims in issue are as follows:

5. A doughy putty-like plastic composition comprising nitrocellulose in a solution containing a volatile liquid, and a finely divided cellulose filler in such proportions as to harden upon mere exposure to air to substantially the rigidity and solidity of wood.

6. A doughy putty-like plastic composition comprising nitrocellulose in a solution containing a volatile liquid and a finely divided cellulose filler in such proportions as to harden upon mere exposure to air to substantially the rigidity and solidity of wood, said filler being present in not less than fifteen parts by weight.

7. A doughy putty-like plastic composition comprising nitrocellulose in a solution containing a volatile liquid, and a filler of finely divided wood flour in such proportions as to harden upon mere exposure to air to substantially the rigidity and solidity of wood, said filler being present in not less than fifteen parts by weight.

14. A doughy putty-like plastic composition comprising nitrocellulose in a solution containing a volatile liquid and a finely divided wood filler in such proportions as to harden upon mere exposure to air to substantially the rigidity and solidity of wood.

17. A composition of matter for hole filling and filleting, which before exposure to the air is dough-like and putty-like, and contains finely divided wood, nitrocel-lulose and a volatile liquid, and after exposure to the air has a wood-like rigidity and solidity and is essentially finely divided wood held together by the nitrocellulose.

18. A composition of matter for hole filling and filleting, which before exposure to the air is dough-like and putty-like and contains a volatile liquid, nitrocellulose, and about 15 to about 30 percent by weight of finely divided wood, and which after exposure to the air has a wood-like solidity and rigidity and is essentially the finely divided wood held together by the nitrocellulose.

Claims 1 to 4, inclusive, and 12, 13, 15, and 16 in the patent, define five-ingredient compositions, and claims 8 to 11, inclusive, define four-ingredient compositions, omitting resinous matter. Claims 5, 6, 7, 14, 17, and 18, the claims in suit, define three-ingredient compositions, omitting non-drying oil and resinous matter.

As has been noted above, the application for the patent in suit was filed November 17, 1923, and was issued December 29, 1931. The time between these dates was occupied in prosecuting the case for the patent in the Patent Office, the Board of Patent Appeals, and the Supreme Court of the District of Columbia. Claims 1 to 4, inclusive, in the patent, and not involved in the present suit, were originally allowed by the patent examiner; and the Supreme Court of the District of Columbia directed the Commissioner of Patents to add to the patent the claims numbered 5 to 18, inclusive, six of which are in issue in the present suit.

There was no dispute between the parties that the plaintiff is the owner of the patent and the Siegel Company, who are retailers of paints, sold the goods charged to infringe, at Boston, and that the manufacturer of those goods is the Sheffield Company of 1934.

In the case of The A. S. Boyle Co. v. Harris-Thomas Co. et al., 18 F.Supp. 177, this Court in a suit for infringement of the patent in suit here sustained the validity of claims 5, 6, 8, 11, 13, 15, 16, 17, and 18.

In an unreported decision filed September 25, 1937, in the United States District Court, Western District of Washington, Northern Division, in a suit between The A. S. Boyle Company, the present plaintiff and The Pacific Marine Supply Company, and Webb Products Co., Inc., intervener, for infringement of the patent

here in suit, the Court held claims 5, 8, 13, 16, and 17 valid and infringed.

In the case of The A. S. Boyle Co. v. Harris-Thomas Co., supra, the defendant put in evidence 85 different patents and several excerpts from text-books and publications. After review of the prior art, this Court said in that case, page 180:

"The significant thing that emerges from an examinaton of the prior art and the evidence of widespread knowledge of the properties of nitrocellulose which it affords, is that nobody thought of making it [plastic wood] available in the workshop and in the home in the form of a convenient putty for repairs to articles made of wood."

In the case of The A. S. Boyle Co. v. The Pacific Marine Supply Co., supra, there was also a review of the prior state of the art.

The only claims in issue in the present suit not involved in these adjudicated cases are claims 7 and 14.

It will be seen that claim 6 differs from claim 5 merely by specifying that the cellulose filler is present in not less than fifteen parts by weight; claim 7 differs from claim 6 only in specifying that the finely divided cellulose filler is wood flour; and claim 14 is the same as claim 5 except that it specifies a finely divided wood filler instead of a finely divided cellulose filler.

In order to establish that the claims in suit were anticipated by the prior art the defendant relied, in addition to the patents and publications considered in the cases of The A. S. Boyle Co. v. Harris-Thomas Co., supra, and The A. S. Boyle Co. v. The Pacific Marine Supply Co., supra, on the British patents to Tas and David No. 22,528 (1907) and Feldmann, No. 148,117, and an article published in the "Scientific American Encyclopedia of Formulas," pp. 779–782.

The Tas and David patent, No. 22,528, is described as " * * * a plastic composition suitable for waterproofing, for the repair of articles or goods of leather, rubber or the like * * *." and when put together it had the appearance of black-tar and contained about 40% asphaltum.

The Feldmann patent, No. 148,117, relates to the preparation of a plastic character used as filling or coating materials, and applied to irregular surfaces preparatory to painting. When put together it is a white substance and when dry is hard, stiff, and brittle.

The publication in the "Scientific American Encyclopedia of Formulas", pp. 770–782, concerns itself with the properties of celluloid and its uses. It taught nothing in relation to the composition of the patentee.

This Court in the case of The A. S. Boyle Company v. Harris-Thomas Co., supra, stated that although " * * * inventors have mixed nitrocellulose with sawdust to make artificial wood" (18 F. Supp. page 180), it found nothing therein that anticipated the invention of Griffiths. A useful function hitherto unknown was supplied to the art. A complete review of the Pierson patent No. 65267, May 28, 1867, upon which the plaintiff greatly relied in this case to prove the prior art was made in the case just cited and a finding made that the Griffiths' invention was not anticipated by it. In view of this finding and after an examination of the patents and publications introduced in evidence by the defendants, I arrive at a similar conclusion.

The facts show that the commercial product of the plaintiff "Plastic Wood" was first manufactured for commercial use in 1925 and it had a wide variety of uses in repairing and restoring wood products. It met with marked commercial success and imitators immediately appeared on the market in 1926. These imitating compositions were called "Wood Fix," "Wonder Wood," "Fix It," "Magic Wood," "Dandee Wood Putty," "Patch Wood," "Wood Dough," and many others. On December 24, 1928, Sheffield Bronze Powder and Stencil Company (hereinafter referred to in this opinion as the Sheffield Company of 1928), was incorporated in Ohio, and that between December 24, 1928 and January 5, 1933, the business of the company included the sale of several products including an artificial wood composition known as "Patching Wood" and the business in connection with this product amounted to about 25% of the company's business; that on February 29, 1932, suit was filed by the plaintiff in this case against this company (Sheffield Company of 1928) in the United States District Court for the Northern District of Ohio, Eastern Division, charging infringement of the patent here in suit, and a consent decree was entered into to the effect that the letters patent issued to Griffiths, No. 1,838,618, were valid and the Sheffield Company of 1928 had infringed the patent

and an injunction was ordered restraining the defendant, its directors, officers, and others from manufacturing or selling plastic compositions made in accordance with the invention in the Griffiths patent or from in any wise infringing the letters patent. The stock in that company was held as follows: Leon W. Diamond, president, 1 share; Mrs. Leon W. Diamond, 49 shares; Abraham Gross, secretary and treasurer, 48 shares; Mrs. Abraham Gross, 1 share; Morris Goldstein, 1 share.

On January 15, 1934, the Sheffield Company of 1928 was petitioned into bankruptcy and assent to the adjudication was signed by the said Abraham Gross, secretary and treasurer, and on February 17, 1934, the company was adjudicated a bankrupt. It was agreed that the officers of the company had done all they could to prevent this action being taken. On March 24, 1934, all the assets of the Sheffield Company of 1928, including accounts receivable were purchased by the said Abraham Gross for $45,000, and on March 29, 1934, The Sheffield Bronze Powder and Stencil Company, Inc. (the Sheffield Company of 1934), and now a defendant in this suit was incorporated and all the assets of the Sheffield Company of 1928 purchased by Abraham Gross became the property of the Sheffield Company of 1934. The entire capital stock of the Sheffield Company of 1934 is owned by Abraham Gross, his wife, and daughters.

In 1932 Pius J. Zuris, a chemical expert who testified at the trial for the defendants, testified and I find it to be the fact that he began to do some work for the Sheffield Company of 1928 on polishes. It does not appear how much work he performed. In 1934 he informed the Sheffield company of 1934, it now being in existence, that he could give them a composition that could be sold in competition with "Plastic Wood," the product of the plaintiff, after he had been asked to work in this connection by this company. He testified that he had looked up the patents connected with this product after he had begun his work and that he did not use cellulose nitrate in his composition because it was covered by the patent, and he "wanted to make something different that would serve the purpose," and that he started with casein and it finally simmered down to cellulose acetate.

The plaintiff maintained that the defendants were estopped from contesting the validity of the patent in suit since that matter was made res judicata as to them by the decree in the case of The A. S. Boyle Co. v. Sheffield Bronze Powder and Stencil Co. (Sheffield Company of 1928), above referred to. The adjudication in that case constitutes an estoppel by judgment binding upon the parties or their privies and all questions of law and fact distinctly put in issue and determined by the decree cannot be disputed in a subsequent suit between such parties or their privies. Warner v. Tennessee Products Corp. 6 Cir., 57 F.2d 642.

The facts show that the Siegel Company took no part and had no interest whatsoever in the suit in question. It was a stranger to those proceedings and the Court in that suit never had any jurisdiction over it. Its interests were not legally represented at the time and it could take no advantage of the decree entered. It is well established that the estoppel to be good must be mutual. Bigelow v. Old Dominion Mining & Smelting Co., 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009, Ann.Cas. 1913E, 875. The Siegel Company has been represented by counsel in the present suit and has conducted all the proceedings in connection with it up to the time of actual trial. I cannot agree with the contention of the plaintiff in this regard. The Siegel Company has its right to a day in Court. The rule of law invoked has no application to this defendant.

As far as the Sheffield Company of 1934 is concerned there is no evidence that it is an agent, servant, or confederate of the Sheffield Company of 1928 in any way. It was not a party to the original suit and was not represented in any way. This is not a case by any means where the formation of the Sheffield Company of 1934 was "part of a fraudulent and collusive attempt by the parties in an infringement suit to avoid the injunction and to escape the result of that litigation." It is agreed in this case that the officers of the Sheffield Company of 1928 made every effort to prevent the institution of the involuntary bankruptcy proceedings. I find that Abraham Gross in forming his new corporation had no thought in mind when he did so of manufacturing an article that would infringe the plaintiff's product. As far as the evidence goes he was in entire good faith in his conduct and it was only when the expert Zuris represented to the corporate officers that he had an article that could be sold in com-

petition with the plaintiff's product that the corporation commenced to manufacture the alleged infringing composition in suit. And again this is not a case where there has been an infringement beyond any question of doubt, which is always helpful in establishing the fact that the new corporation is merely a veil for the protection of wrong-doing. This corporation did not commence to manufacture the alleged infringing article for three years after its establishment, and at the present time only 4% of its present business is included in its manufacture. It may be of some value to know the plaintiff company ·in this case never brought any proceedings against the Sheffield Company of 1934 in Ohio in respect of the alleged infringing composition. It is not a case of a privy and controlling factor in the original suit becoming connected with a corporation that with his assistance commits acts which he knows are in violation of the injunction, thereby making the successor corporation a privy to the original decree. I think it is well to be cautious in applying such a strict rule as estoppel by judgment and although we find an officer of the first corporation the owner of the second, it is my opinion that the Sheffield Company of 1934 is not a privy through any connection of Gross with it and the Sheffield Company of 1928, and it is not estopped from contesting the validity of the patent in suit. Hoover Co. v. Exchange Vacuum Cleaner Co. Inc., D.C., 1 F.Supp. 997, disapproving Campbell v. Magnet Light Co., C.C., 175 F. 117, and Donaldson v. Roksament Stone Co., C.C., 176 F. 368; Harvey v. Bettis, et al., 9 Cir., 35 F.2d 349; E. W. Bliss Co. v. Atlantic Handle Co., D.C., 212 F. 190, 191.

■ The defendant contends that the claims in suit are broader than the specification, in that these claims specify only three essential elements while the formulæ specify five essential elements. I do not find this to be the fact.

This contention was based partly upon the assertion that the claims described a composition which neither the inventor nor the plaintiff ever made or sold and which has no commercial utility and "which is not described nor even suggested in the patent specification."

One Walter Silbersack, president of the plaintiff company, testified for the plaintiff, and I find it to be a fact, that the only reason the plaintiff did not put out the three-element combination was that for average use they felt the five-element composition would work better. They were selling their product to hardware and paint retailers and the five-ingredient composition offered a greater variety of uses.

The facts show that the three-ingredient composition embraced by the claims in suit was a little more brittle and did not have "exact adhesive qualities" as the five-ingredient composition, which was manufactured and sold by the plaintiff as "Plastic Wood." At the trial one of the experts for the plaintiff, following the formula on page 1 of the patent and omitting castor oil and ester gum, put together the ·three-ingredient combination specified in the claims in suit that had the same properties and characteristics of the five-element combination specified in the other claims, and when placed in a crack in a piece of wood this composition appeared to be of equal utility, as a wood repairing composition, to the five-ingredient combination. This composition hardened into substantially the rigidity and solidity of wood and there appeared to be absolutely no difference between the two in adhesive qualities. It was equally valuable for the purpose sought to be served. There was no noticeable difference in brittleness. The three-ingredient combination as far as I could observe had all the characteristics and qualities of the commercial product, "Plastic Wood," manufactured by the plaintiff and "Wood Fix" manufactured by the defendant, Sheffield Company of 1934.

The Court in the case of The A. S. Boyle Co. v. Harris-Thomas Co., supra, 18 F.Supp., page 181, said:

"The patentee is not bound to use in his claims the precise phraseology with which he sets forth the invention specification." Cleveland Foundry Co. v. Detroit Vapor Stove Co., 6 Cir., 131 F. 853, 857.

■ It hardly needs a citation of authorities to substantiate the assertion that an inventor is allowed claims commensurate with his invention. Asbestos Shingle, Slate & Sheathing Co. et al. v. Rock Fibre Mfg. Co., D. C., 217 F. 66. The Court should be liberal in its construction of a patent to secure to the inventor the reward he deserves. Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U. S. 45, 63, 43 S.Ct. 322, 67 L.Ed. 523.

The further contention that the claims are invalid because they specify nitrocellulose and there are some kinds of nitrocellulose which cannot be used successfully in the Griffiths composition and hence the claims were too broad and invalid, cannot be sustained. The claims specify nitrocellulose. The patentee stated in his deposition that there were certain types of nitrocelluloses, highly nitrated and explosive, wholly unsuited for use in his composition and that nitrocellulose soluble in ether alcohol is suitable for use. However, in the specification celluloid scrap is the form mentioned to be used and the specification later says that in place of celluloid scrap other forms of nitrocellulose may be used, such as celluloid in the form of sheet or the like. This is the plain guide as to the type of nitrocellulose that is to be used in the composition, namely, that used in the manufacture of celluloid. This variety, it is suggested in the specification, contains the proper degree of nitration. It does not seem that one skilled in the art would have much difficulty about this. He would select a nitrocellulose having the proper degree of nitration. Claims must be read in the light of the disclosure of the specification, not to restrict the invention to the precise structure disclosed, but to grasp the invention in order properly to measure the range of equivalents. Walker On Patents, Deller's Ed. p. 1243; Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 22 S.Ct. 698, 46 L.Ed. 968; Mossberg et al. v. Nutter et al., 1 Cir., 135 F. 95.

The case of Corona Cord Tire Co. v. Dovan, 276 U.S. 358, 48 S.Ct. 380, 72 L.Ed. 610, cited by the defendant, in view of the disclosure in the specification is not in point.

This was an invention that met with marked commercial success. The patentee should be allowed claims commensurate with the real invention. Asbestos Shingle, Slate & Sheathing Co., et al v. Rock Fibre Mfg. Co., supra.

Further the Court in the case of Griffiths v. Robertson, Supreme Court of the District of Columbia, Equity No. 50185, in an unreported decision filed August 4, 1931, authorizing the Patent Commissioner to include in the patent the claims in suit, said: "The plaintiffs are entitled to claims broad enough to prevent the manufacture of compositions of matter containing only the three so-called essential ingredients." The

defendants, in their brief contended the Court was wrong in this case. To this I cannot agree.

The defendants argue that the patent, including the claims in suit, is invalid for failure of the patentee to disclaim for a reasonable length of time after he became aware that his claims were too broad; that he claimed more than he invented. The facts he relies on are as follows:

July 23, 1936, Griffiths, the patentee gave a deposition in the case of The A. S. Boyle Co. v. Harris-Thomas Co., supra, and in that deposition when asked a question as to whether there were any differences as to his composition as described in the patent and the articles appearing in the two publications, "Engineering" of December 9, 1921, and "The Engineer," of March 3, 1922, said that the descriptions therein referred to the same composition described in the patent but "the articles do not give details or ingredients of preparations which would enable a composition similar to plastic wood to be made up."

Defendants argued that in view of this statement the plaintiff cannot now maintain that the claims in suit are in compliance with Revised Statutes, § 4888, 35 U.S.C.A. § 33, as regards exactness and certainty. The defendants maintained that this statement proved that Griffiths knew his claims were too broad and he should have disclaimed in accordance with the provisions of Revised Statutes, § 4917, 35 U.S.C.A. § 65, and having failed to do so within a reasonable time his entire patent is invalid.

The statements included in the above named publications do not prove what the defendants contend by any means. They are culled out from the remainder of the depositions and made to stand alone, and it is now asked that these be taken as admissions against interest; but Griffiths never admitted what the defendants say he did. Griffiths said that the articles in question "should give information to the public regarding the properties of plastic wood." He said that they did not give information as to the details of the ingredients but that the compositions referred to in these publications were the same as the compositions described in the patent (lines 12 to 27), where is specified a formula of the ingredients and the parts by weight. I cannot find any "awareness" that he knew the claims in suit were too

broad. He had in his mind at all times that the compositions specified in the claims could be made from the formula he had in mind. There is no evidence that he knew he claimed more or even thought he claimed more than. he originally invented or that he knew any of the claims in the patent were invalid.

He stated further in his deposition that only the nitrocelluloses soluble in ether alcohol were suitable for use in his invention. He said further in this connection that any one skilled in the art would select nitrocellulose having a proper degree of nitration to the same degree as that contained in celluloid "in the form of sheet or the like" as it is expressed in the specification of the patent (col. 2, line 78).

Not only did Griffiths not think that these claims were invalid but it can be easily seen that there was ample basis for the belief in view of the decisions· in the cases of The A. S. Boyle Co. v. Harris-Thomas Co., supra, The A. S. Boyle Co. v. The Pacific Marine Supply Co., supra, and Griffiths v. Robertson, supra.

In view of these facts I cannot find there was necessity for filing a disclaimer under the provisions of Revised Statutes § 4917, 35 U.S.C.A. § 65.

█ Where a patentee has no reason to believe his claims are void he has right to insist upon their validity and' cannot be deprived of his right to have them passed upon by the Courts. Walker On Patents, Deller's Ed. Vol. 2, Sec. 293, pp. 1307, 1308; Seymour v. McCormick, 60 How. 96, 60 U.S. 96, 106, 15 L.Ed. 557; O'Reilly et al. v. Morse et al., 15 How. 62, 121, 14 L.Ed. 601.

We now come to the question of infringement.

The evidence plainly showed that the expert for the defendants, to make something different that would serve the purpose, was in search of a substitute for cellulose nitrate in the product of the plaintiff. It further appears that in March, 1935, he submitted a sample of his artificial wood to the defendant, Sheffield Company of 1934. The expert for the defendants testified this product called "Wood Fix" is a thoroughly satisfactory artificial wood composition to be utilized for the same purposes as the plaintiff's "Plastic Wood."

The five-ingredient formula of the Griffiths composition described in the specification is as follows, figures being on the basis of per cent of the whole by weight:

| Nitrocellulose | 13% | |
| Oils and gum | 10 | |
| Solvent | 53.9 | |
| Wood flour filler | 23.1 | 100% |

The formula of "Wood Fix," alleged infringing article, is as follows:

| Cellulose acetate | 14.8% | |
| Condensite (synthetic resin) | 5.4 | |
| *Solvents | 49.7 | |
| Wood flour filler | 26 | |
| Kaolin | 4 | 99.9% |
| *Methyl alcohol | 19.4 | |
| Acetone | 19.4 | |
| Dracetin | 10.9 · | 49.7% |

The amount of cellulose acetate in the defendants' formula in making "Wood Fix" is approximately the same as the amount of nitrocellulose in the formula of the patentee. The wood flour filler in each formula is nearly the same, as is the amount of solvents. The condensite, a resinous body, as ester gum in the plaintiff's composition, is less than in the formula of the patentee but this,· as is the other differences, is inconsequential. The kaolin is merely a filler of white clay material. The product of the manufacturing defendant, "Wood Fix" had all the appearances and characteristics of the composition of the plaintiff. It is a plastic composition of putty-like consistency and on exposure to the air it hardens as does the product of the plaintiff to practically the solidity and rigidity of wood. When wood cracks were filled with each composition for demonstration purposes, the qualities of both products appeared to be exactly the same in properties and characteristics. They are equally effective in accomplishing the purpose for which they are manufactured, to wit: repairing and restoring wood.

The claims in suit embody a three-ingredient composition consisting of nitrocellulose, solvents, and wood filler, all essential to the combination, the oils and gum being omitted. The function of the nitrocellulose is to hold the wood flour together after the solvents have evaporated. Claim 5, the first of the claims in suit, described this composition as follows:

"A doughy putty-like plastic composition comprising nitrocellulose in a solution

containing a volatile liquid, and a finely divided cellulose filler in such proportions as to harden upon mere exposure to air to substantially the rigidity and solidity of wood."

It is contended by the plaintiff that the cellulose acetate used by the defendant Sheffield Company of 1934 in its composition is the equivalent of nitrocellulose in the composition of the plaintiff as described in the claims in suit; that it performs the same function as the nitrocellulose, that of a binder.

Both cellulose nitrate and cellulose acetate are made from the basic substance, namely, cellulose. Cellulose is the chemical name for the material which comprises the major part of wood pulp or cotton linters. If you treat purified cellulose with a mixture of nitrate and sulphuric acid, the result is cellulose nitrate. On the other hand, if you treat it with the mixture of acetic acid, acetic anhydride, and a little sulphuric acid, cellulose acetate results. In some forms they closely resemble one another. They are white, fluffy usually, and are convertible into similar materials industrially. For example, you can make sheets out of both. Celluloid is made out of cellulose nitrate and camphor. Some solvents will dissolve them both and the solution will be essentially the same. They will both make a transparent plastic material that has the property of toughness, not brittle, and both are good binders to hold things together in a mixture. There is a difference in inflammability, nitrocellulose being far more inflammable. For this reason cellulose acetate is the composition used to make moving picture films for use at home, without a booth. The only reason cellulose nitrate is not used for safety glass for windshields in automobiles in place of cellulose acetate, which is used, is that the former has a tendency to turn brown to exposure to the light. An expert for the plaintiff testified, and I find this to be a fact, that nitrocellulose and cellulose acetate have been recognized as equivalents for a great many years in commercial use. They have been used interchangeably to serve the same purpose in these uses. These substances are also recognized in the art as equivalents as is evidenced by the following patents, Kessler No. 1,408,095, February 28, 1922, Seaton No. 1,397,986, November 22, 1921, and Dreyfus 1,353,385, September 21, 1920, and publications introduced by the plaintiff. It required no search on the part of the manufacturing defendant's expert to know that cellulose acetate would serve the same purpose as would cellulose nitrate in his efforts to put together a composition that would serve as artificial wood.

Solutions of nitrocellulose and cellulose acetate have the same consistency of a sticky syrup. Compositions were offered at the trial made with celluloid scrap (nitrocellulose), volatile solvents, and wood flour on the one hand, and cellulose acetate scrap, volatile solvents, and wood flour on the other hand, both being plastics of the consistency of putty, and when cracks in wood were filled with each of these the compositions hardened to substantially the rigidity and solidity of wood and could not be distinguished from one another, and each appeared to have the same degree of adhesiveness to the wood. In putting together the three-ingredient composition described by the claims in suit the plaintiff's expert used the formula appearing on page 1, line 71 specified in the patent.

Walker on Patents, Deller's Edition, Vol. 3, p. 1700, says that:

"No substitution of an equivalent for any ingredient of a combination covered by any claim of a patent can avert a charge of infringement of that claim."

And further, at page 1703, the same author says:

"There are two tests of equivalency:

"(a) identity of function;

"(b) substantial identity of way of performing that function."

In Tyler v. Boston, 7 Wall. 327, 74 U.S. 327, 19 L.Ed. 93, Mr. Justice Grier stated [page 330]:

"This term 'equivalent,' when speaking of machines, has a certain definite meaning, but when used with regard to the chemical action of such fluids as can be discovered only by experiment, it only means equally good."

Cellulose acetate was a known equivalent as evidenced in the art long before 1935 when the manufacturing defendant's composition was first put together. These substances could be used interchangeably and perform the same function in substantially the same way.

I have no hesitancy in finding that cellulose acetate is an equivalent of cellu-

lose nitrate when used in the combination described in the claims in suit. It performs the same function in a substantially identical manner. It has been referred to by both parties to this litigation as the binder, which it is.

Infringement of patents for composition of matter depends upon sameness of or equivalence of ingredients, and upon the substantial sameness of the proportion of those ingredients, but changes in the proportion of ingredients of a composition which do not affect the operative character of the composition do not avoid infringement. Walker on Patents, Deller's Ed., Vol. 3, Sec. 489, p. 1738; Bird v. Sears, Roebuck & Co., 2 Cir., 299 F. 574; Treibacher-Chemische Werke Gesselschaft et al. v. Roessle & Hasslacher Chemical Co., 2 Cir., 219 F. 210; Welsbach Light Co. v. Sunlight Incandescent Gas Lamp Co., C.C., 87 F. 221; Atlantic Giant-Powder Co. v. Goodyear, Fed.Cas. No. 623.

From the evidence in this case the same or equivalent essential ingredients were used in both the three-ingredient composition of "Plastic Wood" described by the claims in suit and "Wood Fix" of the defendant, Sheffield Company of 1934. In making the three-ingredient composition as described by these claims, the plaintiff's expert used the formula appearing in the specification of the patent on page 1, line 71, omitting castor oil and ester gum. The same result in each was produced by the same means; there are no express limitations on the amounts of any of the ingredients in the claims in suit, and from the evidence I cannot find that there were changes in the proportions of ingredients which affected the operative character of the composition. Kansas City Southern Ry. Co. et al. v. Silica Products Co., 8 Cir., 48 F.2d 503; Carbide & Carbon Chemicals Corp. v. Texas Co., D.C., 21 F.2d 199; Theroz Co. v. U. S. Industrial Chemical Co., Inc., D.C., 14 F.2d 629; Panzl v. Battle Is. Paper & Pulp Co., D.C., 132 F. 607, 613. The presence of the condensite and kaolin in the manufacturing defendant's composition would merely have the tendency to make the composition a little less brittle and a little more adhesive and hardly avoid infringement, inasmuch as they do not substantially change the characteristics of the composition. Samson Granite Co., Inc., v. Crozier Straub, Inc., et al.,

3 Cir., 41 F.2d 628, 630; Lampus v. Crozier-Straub, Inc., 3 Cir., 41 F.2d 746.

The defendants contend that the proceedings in the patent office estop the plaintiff from claiming cellulose acetate as an equivalent for nitrocellulose in the compositions specified in the claims in suit.

The application as originally filed specified nitrocellulose in all the claims as an ingredient of the composition. On February 6, 1925 an amendment was filed to the following effect:

"While it is preferred to employ nitrocellulose * * * in the form of celluloid scrap, the invention is not limited to this ester but contemplates the use of other esters, particularly cellulose acetate. * * *"

Seven additional claims were filed reciting cellulose esters. The amendment as to cellulose acetate was ordered stricken out "as containing new matters of invention not mentioned in the original specification" and the claims were rejected "as being broader than the invention disclosed in the specification." After a further rejection, after argument, the statement as to cellulose acetate and the claims were cancelled by the applicant on July 29, 1926. On the same day ten new claims were filed, one of which recited cellulose ester instead of nitrocellulose. These were rejected by the Patent Commissioner and subsequently cancelled on September 7, 1927.

The claims in suit were not inserted in the application until February 13, 1928, and were rejected February 16, 1928. These claims were ordered included in the patent by the Supreme Court of the District of Columbia in the case of Griffiths v. Robertson, supra.

The plaintiff argues that the objection to the claims is purely procedural; that the patentee did not give up any rights to have the claims construed in the light of the specification and given whatever range of equivalents the position of the invention in the art entitled it to. The defendants contended that the effect of cancellation is the same regardless of the reason for rejection.

It is well established in a long line of cases beginning with Leggett et al. v. Avery et al., 101 U.S. 256, 25 L.Ed. 865, that where an applicant, on the rejection of his application, inserts in consequence of that rejection, limitations and restric-

tions into his specification, for the purpose of obtaining the patent, he cannot after he has obtained it, claim that it shall be construed as it would if such limitations and restrictions were not contained in it. Walker On Patents, Deller's Ed. Vol. 3, Sec. 249, p. 1215; Royer v. Coupe, 146 U.S. 524, 13 S.Ct. 166, 36 L.Ed. 1073; The Yale Lock Mfg. Co. et al. v. Berkshire National Bank et al., 135 U.S. 342, 10 S.Ct. 884, 34 L.Ed. 168; Roemer v. Peddie et al., 132 U.S. 313, 10 S.Ct. 98, 33 L.Ed. 382; Shepard v. Carrigan, 116 U.S. 593, 6 S.Ct. 493, 29 L.Ed. 723; Union Metallic Cartridge Co. v. U. S. Cartridge Co., 112 U.S. 624, 5 S.Ct. 475, 28 L.Ed. 828; Macbeth et al. v. Gillinder et al., C.C., 54 F. 169.

However, the theory underlying these cases is that the patentee has acquiesced in the rejection by restricting his claims or filing a disclaimer: that he has intentionally relinquished a known right.

In speaking of the principle involved in these cases, the Court in the case of Reece Button-Hole Mach. Co. v. Globe Button-Hole Mach. Co. et al., 1 Cir., 61 F. 958, at page 969, stated: "There were direct issues of novelty, or of interference, based on specific prior patents or pending applications, to which the inventor yielded. Therefore, in each of these cases there was a fair issue, formulated and understood by the applicant for the patent, requiring him clearly to yield directly a portion of what he claimed." And again it was stated in Hillborn et al. v. Hale & Kilburn Mfg. Co., 3 Cir., 69 F. 958, 960: "It may well be that a patentee cannot be permitted to hold under his patent anything that he has clearly renounced and excluded from his inventions during the prosecution of his application." This rule is a peculiar application of the general principle of law relative to the interpretation of instruments. Ball & Socket Fastener Co. v. Ball Glove Fastening Co., 1 Cir., 58 F. 818, 824.

■ In the present case there were no concessions made to the patent office. The plaintiff at no time evidenced any intention to restrict his claims as filed. If the applicant voluntarily restricted himself by an amendment of his claim which was rejected on reference to a prior patent without objection or appeal there is no doubt that he would have submitted himself to the rule of limitation of claims by estoppel. The claims on cellulose esters were not rejected by the patent office on any prior art and later concessions made by the applicant, which has been the case in practically all of the decided cases dealing with this subject. In all the decided cases that I have been able to find, the Court has always been careful to spell out a submission or acquiescence to the demands of the patent office. As stated in the case of Altoona Publix Theatres, Inc. v. American Tri-Ergon Corp. et al., 294 U.S. 477, at page 492, 55 S.Ct. 455, at page 461, 79 L.Ed. 1005: "It has long been settled that a claim abandoned or rejected in the Patent Office with the acquiescence of the applicant cannot be revived * * *." In all the proceedings concerning these claims in the patent office and later in the Supreme Court of the District of Columbia where the claims were finally allowed in the case of Griffiths v. Robertson, supra, the patentee insisted upon the claims in the language in which they appear in the present suit.

■ There was no voluntary compliance with the conditions imposed by the patent office and where, as is the case here, an applicant insists upon his claims by appeal to the Courts, the doctrine of limitation by file wrapper estoppel does not apply. Walker On Patents, Deller's Ed., Vol 2, p. 1218; Smith v. Magic City Kennel Club, Inc., et al., 282 U.S. 784, 51 S.Ct. 291, 75 L.Ed. 707; I. T. S. Rubber Co. v. Essex Rubber Co., 272 U.S. 429, 443, 444, 47 S.Ct. 136, 71 L.Ed. 335; Weber Electric Co. v. E. H. Freeman Electric Co., 256 U.S. 668, 677, 41 S.Ct. 600, 65 L.Ed. 1162; E. Van Noorden Co. et al. v. Cheney Co., 1 Cir., 75 F.2d 298, 302; American Cone & Wafer Co. et al. v. Denaro, 1 Cir., 297 F. 913; Johnston v. Davenport Brick & Tile Co., D.C., 237 F. 668, 669; Frey et al. v. Marvel Auto Supply Co., 6 Cir., 236 F. 916, 921; Gray Telephone Pay Station Co. v. Baird Mfg. Co., 7 Cir., 174 F. 417, 422; U. S. Peg-Wood, S. & L. B. Co. v. B. F. Sturtevant Co., 1 Cir., 125 F. 382; Bundy Mfg. Co. v. Detroit Time-Register Co., 6 Cir., 94 F. 524, 542; Thomas v. Rocker Spring Co., 6 Cir., 77 F. 420, 431; Shaw Stocking Co. v. Pearson, C.C., 48 F. 234.

■ I conclude that the claims in suit are valid and infringed.

A decree may be entered against the defendants for an injunction and an accounting, with costs.