**ARCO POLYMERS, INC.**

v.

**STUDIENGESELLSCHAFT KOHLE mbH and Max Planck Institut Fur Kohlenforschung.**

Civ. A. No. 78–2917.

United States District Court, E.D. Pennsylvania.

Nov. 23, 1982.

548

Frank H. Griffin, III, Dechert, Price & Rhoads, Philadelphia, Pa., Paul E. Crawford, Connolly, Bove & Lodge, Wilmington, Del., for plaintiff.

Donald K. Joseph, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., Arnold Sprung, Sprung, Felfe, Horn, Lynch & Kramer, New York City, for defendants.

## MEMORANDUM AND ORDER

HANNUM, District Judge.

This is a declaratory judgment action in which plaintiff, ARCO Polymers, Inc. (API), seeks a judgment of invalidity and noninfringement of two of defendants' patents, namely, United States Patents No. 3,113,-115 and No. 9,903,017. The dispositive issue of this lawsuit in its current posture, however, is the validity of United States Patent No. 3,113,115 (hereinafter the " '115 patent"). Now before the Court are two motions: (1) Defendants' Motion For Summary Judgment And/Or Dismissal On The Grounds Of Res Judicata And Licensee Estoppel; and (2) Plaintiff's Motion For Stay Of Proceedings And Other Interim Relief.

The '115 patent at issue was originally the property of Professor Karl Ziegler until his death in 1973 when ownership of the patent passed to the defendant Studiengesellschaft Kohle mbH, acting as trustee for Professor Ziegler's research institute, the defendant Max Planck Institut Fur Kohlenforschung. Essentially, the '115 patent covers the chemical formulae of a polymerization catalyst used in the chemical reaction processes that produce synthetic polymers. *See Ziegler v. Phillips Petroleum Company,* 483 F.2d 858 (5th Cir.1973), *cert. denied,* 414 U.S. 1079, 94 S.Ct. 597, 38 L.Ed.2d 485 (1973) (setting forth and describing the '115 patent claims). The '115 patent expired December 3, 1980 and plaintiff now seeks in connection with this action, a return of all royalties paid *pendente lite* to defendants under certain license agreements relating to the '115 patent as well as the '017 patent.

In 1977, API purchased "an ongoing polypropylene business" from Diamond Shamrock Corporation.[1] Included in the purchase was "all right, title and interest" in Diamond Shamrock's plant for the manufacture of polypropylene located in Monument, Texas.[2] Also included in the pur-

---

1. *See* Paragraph 3 of Affidavit of Paul E. Crawford In Support Of Plaintiff's Opposition To Defendants' Motion For Summary Judgment And/Or Dismissal, *see* Docket Entry No. 44.

2. Crawford Affidavit, note 1 *supra* at paragraph 3; Affidavit Of Nathaniel Kramer In Support Of Defendant's Motion For Summary Judgment And/Or Dismissal, Docket Entry No. 42 at paragraph 4.

chase was the transfer of a then existing patent license between defendant herein, Studiengesellschaft Kohle mbH and Diamond Shamrock under several patents, including the '115 patent at issue in the instant lawsuit.[3]

Diamond Shamrock had, in turn, earlier acquired all right, title and interest in the Monument facility from Phillips Petroleum Company.[4] Moreover, the Monument facility at which plaintiff has been manufacturing polypropylene is the same plant[5] whose operations gave rise to the litigation in *Ziegler v. Phillips Petroleum Company*, 483 F.2d 858, 875 (5th Cir.) *cert. denied*, 414 U.S. 1079, 94 S.Ct. 597, 38 L.Ed.2d 485 (1973). In *Ziegler, supra*, the '115 patent was found to be both "valid and infringed." *Id.* at 875.[6] To summarize, therefore, the plaintiff in *Ziegler, supra*, was the direct predecessor in interest to the '115 patent now owned by defendants in the present case. Moreover, the Monument plant whose operations were found to infringe the '115 patent, is now owned by Phillips' indirect successor in interest, Arco Polymers, Inc.

### Defendants' Motion For Summary Judgment And/Or Dismissal

Defendants' motion seeks summary judgment and/or dismissal on grounds that 1) Plaintiff is barred by *res judicata* from urging invalidity or noninfringement of the '115 patent in suit in view of the final judgment entered by the Court in *Ziegler v. Phillips Petroleum Company, supra*, which held that the '115 patent was valid and infringed at the Monument polypropylene plant now owned by API; and 2) Plaintiff is barred by licensee estoppel from urging that the '115 patent is valid.

As respects the contention based on *res judicata*, defendants urge that where, as here, a party is successor in interest to the ownership of a facility whose operations are adjudged to infringe a valid patent, the successor party is in privity with the infringer in the prior action and is barred by *res judicata* from relitigating the validity of the patent. *Brunswick Corporation v. Chrysler Corporation*, 408 F.2d 335 (7th Cir. 1980); *Schnitger v. Canoga Electronics Corporation*, 462 F.2d 628 (9th Cir.1972).

In *Brunswick Corporation, supra*, Chrysler Corporation had purchased the engine division of The West Bend Company, which had constituted West Bend's entire business relating to outboard motors and stern drives. West Bend had earlier entered into a consent decree acknowledging that the sale of its "Tiger Shark 800" outboard motors and stern drives infringed a valid patent held by another company, the Kiekhaefer Corporation. The assets of Kiekhaefer, including its patents, were later purchased by Brunswick Corporation. In an infringement suit brought by Brunswick against Chrysler, the Court of Appeals for the Seventh Circuit held that Chrysler was in privity with West Bend Company and was bound by the earlier decree entered between Keikhaefer and West Bend. *Id.* The Court explained:

To determine whether privity existed, we must determine whether Chrysler has succeeded in interest to the subject matter of the prior decree.

In *J.R. Clark Company v. Jones & Laughlin Steel Corp.*, 7 Cir., 1961, 288 F.2d 279, we affirmed a decision for *res judicata* where the defendant was not a corporate successor but had purchased that portion of the business of the previous defendant relating to the manufacture of ironing boards including a stock of ironing tables, tools and various other equipment. In *Clark, supra* at page 280

---

**3.** Crawford Affidavit, note 1 *supra*, at paragraph 4.

**4.** Kramer Affidavit, note 2 *supra*, at paragraph 4. *See also* Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment, Docket Entry No. 44 at 6.

**5.** Kramer Affidavit, note 2 *supra*, at paragraphs 4–6.

**6.** The '115 patent has also recently been upheld by Judge Caleb Wright in *Studiengesellschaft Kohle mbH v. Dart Industries*, 549 F.Supp. 716 (D.Del., 1982) (finding '115 patent valid and infringed).

we said: "The case at bar is not one where a vendee merely purchased one or some limited amount of the alleged infringing product. Here, the defendant purchased from the manufacturer the entire business that was devoted to the production of ironing tables."

In the case at bar, Chrysler purchased from The West Bend Company the entire business that was devoted to the production of "Tiger Shark 800" outboard motors and the inboard-outboard stern drives used with such motors. Furthermore, The West Bend company, having ceased all operations in the field of outboard motors, transferred both its manufacturing and sale facilities and also its personnel to Chrysler. It follows that Chrysler does stand in the shoes of The West Bend Company with respect to the decree in No. 61–C–102.

We hold that as the proof establishes Chrysler succeeded in interest to the subject matter of the prior decree, it is in privity with The West Bend Company, and is bound by the provisions of the decree entered in No. 61–C–102.

408 F.2d at 338.

Plaintiff, however, seeks to distinguish *Brunswick Corporation, supra,* on grounds that that case involved Chrysler's direct purchase of a business from West Bend which had entered into a consent decree admitting validity of the patent asserted against Chrysler. In the present case, plaintiff contends that "API's *indirect* purchase of the Monument plant *after* Diamond Shamrock's intervening purchase of Phillips' business totally isolates and removes API from Phillips, thereby destroying any privity between these companies." [7]

In the Court's view, however, the circumstance of an intervening purchaser (Diamond Shamrock) of the Monument plant does not, in itself, destroy privity as between Phillips and API. " 'Privity' is an ambiguous term, a shorthand designation for those persons who 'have a *sufficiently close relationship* with the record parties to be bound by the judgment.' " *Vulcan v.*

*Fordees Corp.,* 658 F.2d 1106, 1109 (6th Cir. 1981), *quoting* Note, *Developments in the Law—Res Judicata,* 65 Harv.L.Rev. 818, 856 (1952). The circumstances of the present case, upon the undisputed facts of record, evidence such a sufficiently close relationship between API and Phillips. First, it is clear that API was more than a mere purchaser of a limited amount of the infringing product. *Brunswick Corporation, supra* at 336; *Vulcan Inc. v. Fordees Corp., supra* at 1110. Rather, API succeeded to ownership of an entire manufacturing facility and polypropylene business, whose operations were earlier adjudged to be infringing a valid patent. Significantly, there is no allegation by plaintiff that the catalyst used at the Monument plant differs from that used by its predecessor in interest, Phillips, and covered by the claims of the '115 patent.

Second, nothing in the rule of law applied by the Court in *Brunswick Corporation, supra,* requires that only direct successors in interest to the subject matter of a prior decree be bound thereby. In this regard, reference to the policy considerations relative to the finality of litigation is instructive:

> [A] transferee of land, chattels or choses in action with reference to which an action has begun, is bound by and obtains the benefits of the rules of *res judicata* as they apply to the subject matter, which arise from a judgment in the action. The rule necessarily follows from the principles of *res judicata;* otherwise a transfer of property would unsettle controversies which an action was intended to settle. The rule applies to any form of transfer whether by purchase, gift or operation of law.

Restatement of Judgments § 89, Comment C.

Plaintiff also argues, however, that absent some showing of fraudulent intent and collusion with Phillips to avoid the impact of the earlier decision, the earlier judgment is not binding on API. In this regard, we find the case of *A.S. Boyler Siegel Hard-*

---

7. Plaintiff's Memorandum, note 4 *supra* at 7.

*ware & Paint Co.,* 26 F.Supp. 217 (D.Mass. 1938), cited by plaintiff, to be unpersuasive. We find the decision of *Brunswick Corporation v. Chrysler Corporation,* which makes no reference to fraudulent or collusive intent on behalf of the successor corporation, to be the better reasoned decision and is therefore controlling. *See also, Vulcan, Inc. v. Fordees Corp., supra; American Equipment Corp. v. Wikomi Mfg. Co.,* 630 F.2d 544, 546 at n. 1 (7th Cir.1980); *A.W. Schnitger v. Canoga Electronics Corp.,* 462 F.2d 628 (9th Cir.1972).

A final argument by plaintiff relative to the issue of privity is noted as follows: Paragraph 3 of the Affidavit of Paul E. Crawford In Support Of Plaintiff's Opposition To Defendants' Motion For Summary Judgment And/Or Dismissal states: "Since the purchase of the Monument plant plaintiff has made many physical changes thereto." This assertion, plaintiff would argue, raises an issue of fact as to the existence of privity between Phillips and API, the present owner of the plant. As earlier related, however, plaintiff has not alleged nor adduced any evidence that the catalyst used at the Monument plant differs from that used by Phillips and already found to infringe the '115 patent in *Ziegler v. Phillips Petroleum Company, supra.* Under Rule 56 of the Federal Rules of Civil Procedure, once a properly supported motion for summary judgment is made, the opposing party, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Truck Insurance Exchange v. St. Paul Fire and Marine Insurance Company, et al.,* 420 F.Supp. 649, 651 (E.D.Pa.1976). Plaintiff's bare assertion that "many physical changes" were made to the Monument plant, without any specification how such changes may have been germane to the issues at hand, fails to raise a material issue of fact.

Finally, plaintiff has argued that summary judgment is inappropriate due to newly discovered evidence, namely that the existence of a prior German patent, the "Fischer patent," was withheld from the United States Patent and Trademark Office during the prosecution of the '115 patent. It is averred that this earlier patent was withheld notwithstanding "clear indications of the Fischer patent's materiality to prosecution of the '115 patent." [8] Plaintiff's principal support for this contention is a copy of the Amended Complaint in the case of *Amoco Chemicals Corporation v. Studiengeselleschaft Kohle mbH,* Civil Action No. 76–451 (D.Del.) in which the '115 patent was challenged. *See* Exhibit B to *Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment And/Or Dismissal,* Docket Entry No. 44.[9] It is clear however, that the existence of the Fischer patent was brought to the attention of the United States Court of Appeals for the Fifth Circuit during the pendency of *Ziegler v. Phillips Petroleum Company,* as evidenced by references in the briefs submitted by Phillips Petroleum Company. *See* Exhibit A to *Defendants' Reply On Their Motion For Summary Judgment,* Docket Entry No. 48.[10] In the Court's view, therefore, plaintiff has not set forth any newly discovered evidence to relieve API from the binding effect of the judgment in *Ziegler v. Phillips Petroleum Company.*

In conclusion, we hold that upon the undisputed facts of record, API succeeded in interest to the subject matter of the judgment in *Ziegler v. Phillips Petroleum Company, supra,* that API is in privity with Phillips and is therefore bound by the earlier judgment. Accordingly, defendants are entitled to summary judgment as a matter of law.

Since the contention based on *res judicata* is dispositive, we need not address defend-

---

**8.** Plaintiff's Memorandum, note 4 *supra* at 5.

**9.** Apparently, the *Amoco* case was amicably resolved prior to trial. *See* Transcript of Oral Argument of April 15, 1982, Docket Entry No. 50 at 10.

**10.** The brief submitted to the Fifth Circuit also makes reference to doctoral thesis of Dr. Breil, an associate of Professor Ziegler, whose thesis expressed views that the Fischer patent may have anticipated certain features of the '115 patent.

552

ants' remaining contention based on licensee estoppel.[11] Further, plaintiff's Motion For Stay Of Proceedings And Other Interim Relief is rendered moot.

11. At oral argument, the Court noted that it found defendants' arguments based on licensee estoppel to be unpersuasive.